Docket No. 83782–Agenda 24–May 1999.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PAUL WEST, Appellant.

Opinion filed September 23, 1999.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

In February 1986, defendant, Paul West, was indicted in the circuit court of Cook County for murder pursuant to sections 9–1(a)(1) and (a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, pars. 9–1(a)(1), (a)(2)). A jury found defendant guilty after a trial. The circuit court, however, ordered a retrial after granting defendant’s motion for a new trial. Defendant waived his right to a jury, and the circuit court found defendant guilty as charged. Defendant elected to have a jury determine whether he should receive the death penalty, and the jury subsequently found defendant eligible for death under section 9–1(b)(3) of the Criminal Code (Ill. Rev. Stat. 1985, ch. 38, par. 9–1(b)(3)). The jury further concluded, after hearing the evidence in aggravation and mitigation, that there were no mitigating factors sufficient to preclude the imposition of the death penalty, and the circuit court sentenced defendant to death. This court affirmed the conviction and sentence on direct appeal, and the United States Supreme Court denied 
certiorari
. 
People v. West
, 137 Ill. 2d 558 (1990), 
cert. denied
, 500 U.S. 928, 114 L. Ed. 2d 126, 111 S. Ct. 2042 (1991).

Defendant thereafter timely filed a petition, which was later amended, for relief pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1991, ch. 38, par. 122–1 
et seq.
). The circuit court dismissed the amended petition without an evidentiary hearing, and this appeal followed. 134 Ill. 2d R. 651.

BACKGROUND

Our opinion on direct appeal sets forth the details surrounding defendant’s conviction, and we will not repeat them here. Defendant’s conviction stemmed from the January 29, 1986, murder of three-month-old Shardae Harris, who died from internal injuries resulting from a fractured skull and a lacerated liver. We will refer to additional facts from the trial as needed during the course of our opinion.

Following the completion of direct review proceedings, defendant filed a petition for post-conviction relief in the circuit court on October 18, 1991. The petition was later amended on September 5, 1996. Attached to the petition were numerous affidavits submitted by various members of defendant’s family and a neuropsychological evaluation prepared by Michael Gelbort, Ph.D. We will summarize only those claims that are raised by defendant in this appeal.

In the petition, as amended, defendant initially argued that he received ineffective assistance of counsel in that his trial attorney had failed to retain an independent forensic expert. Defendant also alleged that he had received ineffective assistance of counsel during his direct appeal because appellate counsel had failed to argue that the State did not prove, beyond a reasonable doubt, the existence of the statutory aggravating factor that rendered him death-eligible. Defendant also challenged appellate counsel’s competency in failing to argue on direct appeal that the circuit court erred when it refused to accept his jury waiver at sentencing. Defendant further alleged that he was denied effective representation during his sentencing hearing because counsel failed to investigate and present certain mitigating evidence, including evidence that defendant suffered from organic brain syndrome. Finally, defendant claimed that he was denied a fair sentencing hearing when the prosecutor misrepresented to the jury during closing arguments that defendant might be released from prison if he was not sentenced to death and that appellate counsel was ineffective in failing to raise the issue on direct appeal.

Defendant also filed, in conjunction with his amended petition, a motion seeking funds for the appointment of various experts who would substantiate the claims raised in his petition. Specifically, defendant requested funds for (i) a forensic expert to evaluate the forensic records in the case, (ii) a psychological expert to perform a PET brain scan in order to confirm and expand upon the neuropsychological diagnosis offered by Dr. Gelbort, and (iii) a mental health expert to review the evidence of defendant’s abusive and dysfunctional childhood in order to augment the affidavits submitted by defendant’s family. Defendant also renewed a previously denied motion for the depositions of Michael King, who served as trial counsel during defendant’s trial, and Vincent Wagner, who served as private co-counsel during the sentencing hearing. The circuit court denied all of the motions.

The State moved to dismiss the amended petition, and the circuit court held a hearing on the motion. The court subsequently granted the State’s motion, and this appeal followed.

ANALYSIS

The matter is now before this court on dismissal of defendant’s amended petition for relief under the Post-Conviction Hearing Act. A post-conviction action is a collateral attack on a prior conviction and sentence. 
People v. Brisbon
, 164 Ill. 2d 236, 242 (1995); 
People v. Free
, 122 Ill. 2d 367, 377 (1988). As such, the remedy “is not a substitute for, or an addendum to, direct appeal.” 
People v. Kokoraleis
, 159 Ill. 2d 325, 328 (1994). The scope of the proceeding is limited to constitutional matters that neither have been, nor could not have been, previously adjudicated. Any issues which could have been raised on direct appeal, but were not, are procedurally defaulted (
People v. Ruiz
, 132 Ill. 2d 1, 9 (1989)), and any issues which have previously been decided by a reviewing court are barred by the doctrine of 
res judicata
 (
People v. Silagy
, 116 Ill. 2d 357, 365 (1987)). In addition to these procedural bars, a defendant is not entitled to an evidentiary hearing unless the allegations set forth in the petition, as supported by the trial record or accompanying affidavits, make a substantial showing of a constitutional violation. 
People v. Coleman
, 183 Ill. 2d 366, 381 (1998). In making that determination, all well-pleaded facts in the petition and affidavits are to be taken as true, but nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient to require a hearing under the Act. 
Coleman
, 183 Ill. 2d at 381. The dismissal of a post-conviction petition is warranted only when the petition’s allegations of fact–liberally construed in favor of the petitioner and in light of the original trial record–fail to make a substantial showing of a constitutional violation. 
Coleman
, 183 Ill. 2d at 382. On appeal, the circuit court’s decision to dismiss the petition without an evidentiary hearing is subject to plenary review. 
Coleman
, 183 Ill. 2d at 387-88. With these principles in mind, we now address defendant’s contentions, albeit in an order different from that presented in his appellate brief.

Trial Errors

Defendant argues that the circuit court erred in dismissing his claim concerning trial counsel’s failure to retain a forensic expert. According to defendant, the defense theory of the case at trial was that the victim was killed, not by defendant, but by her mother, Shirley Harris. In furtherance of this theory, defendant claims that it was essential for counsel to show that the external injuries on the victim’s body could have been as old as two weeks, thereby predating the time when the victim started to live with defendant. Defendant maintains that, under these circumstances, trial counsel’s decision not to present such expert testimony fell below the range of reasonable professional assistance. Moreover, defendant asserts that, had such an expert been called to testify, a reasonable probability exists that the outcome of his trial would have been different. In a somewhat related claim, defendant contends that, at a minimum, the post-conviction court’s denial of his request for a forensic expert “interfered with [defendant’s] ability to develop his claim and denied [him] a full and fair opportunity to litigate his claim.” Defendant states that “such evidence would show that the several burns and bruises in fact were injuries that occurred previous to the time that petitioner knew the victim.”

The State initially asserts that this argument is procedurally defaulted because the defendant did not raise it on direct appeal. We disagree. In this proceeding, defendant is attempting to take issue, not with what trial counsel did (which was clearly apparent from the face of the record), but with counsel’s decision not to call a forensic expert. See 
Kororaleis
, 159 Ill. 2d at 328-29 (distinguishing between ineffective-assistance-of-counsel claims based on what counsel did and what counsel ought to have done). We have repeatedly noted that a default may not preclude an ineffective-assistance claim for what trial counsel allegedly ought to have done in presenting a defense. See 
People v. Erickson
, 161 Ill. 2d 82, 88 (1994) (and cases cited therein).

The success of such a claim, however, is dependent upon the strength of the supporting affidavits to defendant’s petition, viewed in light of the original trial record. We are, of course, aware that at the dismissal stage of these proceedings, all well-pleaded allegations in the petition are to be taken as true; however, those allegations must be supported by the original trial record or by the petition’s accompanying affidavits. In this case defendant supplied neither the circuit court nor this court with any supporting affidavits or exhibits that support the conclusory allegations contained in defendant’s petition. Defendant claims that the circuit court’s denial of his request for a forensic expert unfairly denied him the opportunity to present such supporting evidence. Therefore, we must initially determine whether the circuit court erred in denying defendant’s motion.

This court has held that the granting of this type of motion is a matter that rests with the discretion of the trial judge. 
People v. Henderson
, 171 Ill. 2d 124, 156-57 (1996); 
People v. Hall
, 157 Ill. 2d 324, 339-40 (1993). The inquiry turns upon whether the proffered testimony would be of assistance to the court. 
Henderson
, 171 Ill. 2d at 157. The trial judge’s determination on the matter will not be disturbed on review absent an abuse of discretion. 
Henderson
, 171 Ill. 2d at 156.

In order to evaluate this contention, a review of the evidence adduced at trial is necessary. The victim’s mother, Shirley Harris, testified that she moved the victim into defendant’s two-story apartment on Friday, January 24, 1986. Shirley first noticed several bruises on the victim’s back on Saturday, January 25, 1986, after she returned from a neighbor’s house. Shirley questioned defendant, who had been home with the victim, about the injuries. Defendant told her that “some man” must have come into the building and had beaten the victim. Two days later, Shirley again noticed additional bruises on the victim’s chest. On the day of the victim’s death, Shirley went to school in the morning and returned home in the early afternoon. Upon her arrival, she checked on the victim, who appeared to be fine. Later in the afternoon, Shirley and defendant “went upstairs” to prepare dinner. The victim remained in defendant’s room in the “downstairs” part of the building. Shirley stated that while she and defendant were preparing dinner, defendant went downstairs by himself to get a cigarette and remained there for approximately 20 minutes. He returned, and the couple ate dinner. About one hour later, Shirley went downstairs to check on the victim. She found the infant, who was lying in a chair, dead.

Shirley further testified that she told defendant that they had to take the victim to the hospital. Defendant refused and told her that they had to “sit down and plan this.” He suggested that they bury the victim in the backyard and tell people that a kidnapping had occurred. Eventually, defendant allowed Shirley to go to the hospital, but only after Shirley had promised defendant that she would tell the doctors that the victim had died of pneumonia and had fallen out of bed. However, when Shirley arrived at the hospital, she told the first doctor that she saw that defendant had killed the victim.

According to the police witnesses who were called to the hospital to investigate the homicide, defendant initially denied any involvement in the victim’s death. He told police that an intruder must have entered the building and killed the victim while defendant and Shirley were upstairs. Upon investigation, however, police found no evidence of a forcible entry into defendant’s building. Defendant then gave police a statement in which he admitted that he had, several days before the victim’s death, struck her two or three times with a leather belt in an effort to “calm her down.” Defendant further admitted that, on the day of the victim’s death, defendant and Shirley were upstairs preparing to eat dinner. The victim was downstairs at this time. At some point, defendant went downstairs to get a cigarette. The victim was crying, which defendant found “irritating” because it was “getting on [his] nerves.” He then picked the victim up and shook her to “calm her down.” In so doing, defendant hit the victim’s head on a dresser. While shaking the victim, defendant then dropped her onto the floor. When he picked her up and put her on a couch, he noticed that she was coughing and gagging. Defendant became frightened because he did not know what to tell Shirley. He returned upstairs, but did not tell Shirley what had occurred. Later on, both he and Shirley were watching television when Shirley heard the victim coughing and went to check on her. Shirley attempted to resuscitate the victim, but her efforts failed.

Defendant testified in his own defense at trial. Defendant maintained that he and Shirley had watched television during the afternoon of January 29, 1986. Defendant then went upstairs, by himself, to prepare dinner. When he later returned downstairs, he saw Shirley holding the victim in her arms. Defendant repeatedly asked Shirley what was wrong with the victim, who appeared to defendant to be coughing and gagging. Defendant told Shirley that they would have to take the victim to the hospital. He denied that he ever told Shirley that they should bury the baby in the backyard. Defendant also claimed that Shirley had told him, in May of 1985, that she did not want her baby. Defendant denied ever striking the victim or causing the injuries that resulted in her death. Moreover, defendant explained that he had been physically abused by police officers during his interrogation and that, in order to prevent further abuse, defendant decided to do what the police told him to do. To that end, he memorized details of a confession, which had been given to him by the police and repeated the story in the seven-page written statement that he later gave to an assistant State’s Attorney. Defendant believed that Shirley had been abusing the baby before she had moved into defendant’s home and that she, knowing that he had been previously incarcerated, had planned all along to implicate him in the victim’s death. Defendant also provided the stipulated testimony of his neighbor, Shirley Gleeson, who, if called to testify, would have stated that defendant and Shirley Harris both visited her on Saturday, January 25, 1986, at 10 p.m. and stayed for about five minutes.

The medical evidence concerning the victim’s cause of death and injuries was presented by way of a stipulation between defense counsel and the prosecutor. Both agreed to present the trial judge, who was sitting as the trier of fact, with the transcript of the testimony of Dr. Barry Lifschultz, the forensic pathologist who performed the autopsy on the victim and who had testified at defendant’s first jury trial. At that time, Dr. Lifschultz stated that he had performed the autopsy on the victim on January 30, 1986. Upon examination, Dr. Lifschultz discovered 73 external injuries on various parts of the victim’s body. Of these, seven could be characterized as either burns or abrasions. Of these seven, two appeared on the victim’s chest. The remainder were on her back and left knee. Dr. Lifschultz stated that the cause of death was due to internal injuries which resulted from blunt trauma to the head and abdomen. On cross-examination, defense counsel asked Dr. Lifschultz what stage of healing the two external chest injuries were in. He replied that those injuries could have been more than five days old, 
i.e.
, inflicted before January 25, 1986, but could not have been older than two weeks, 
i.e.
, inflicted no earlier than January 16, 1986. On redirect examination, the prosecutor asked if the internal injuries that caused the victim’s death could have been inflicted two weeks before death. Dr. Lifschultz indicated that the internal injuries were recent, meaning that they had not yet begun to heal at the time of the autopsy.

As the foregoing demonstrates, defense counsel succeeded in raising the possibility that certain of the external injuries could have been inflicted at some time prior to January 24, 1986, the date the evidence established that the victim moved into defendant’s building. Therefore, we disagree with defendant that an independent forensic expert was needed to present evidence that the victim’s injuries were two weeks old rather than several days old. The record establishes that Dr. Lifschultz readily admitted that some of the injuries were in the healing stages, indicating that they were not of recent origin. He also readily stated that some injuries could have been as old as two weeks. What we must consider here is whether the appointment of a forensic expert would have helped the post-conviction court assess defendant’s allegation of ineffective assistance of trial counsel. We think not.

Assuming such an expert would have been appointed and, assuming further, that such an expert would testify that some of the injuries were two weeks old (as defendant contends), we fail to see how this would demonstrate constitutionally ineffective trial assistance. Claims of ineffective assistance of counsel are analyzed under the familiar two-prong standard enunciated in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and adopted by this court in 
People v. Albanese
, 104 Ill. 2d 504, 525-26 (1984). To succeed on such a claim, a defendant must prove (i) that his attorney’s performance fell below an objective standard of reasonableness, as measured by reference to prevailing professional norms, and (ii) that the substandard representation so prejudiced defendant that there exists a reasonable probability that, absent the errors, the outcome would have been different. 
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. A reasonable probability is a probability sufficient to undermine confidence in the outcome. See 
Albanese
, 104 Ill. 2d at 525.

Decisions concerning which witnesses to call at trial and what evidence to present on defendant’s behalf ultimately rest with trial counsel. 
People v. Ramey
, 152 Ill. 2d 41, 53-55 (1992). These types of decisions have long been viewed as matters of trial strategy (
People v. Haywood
, 82 Ill. 2d 540, 543-44 (1980)), which are generally immune from claims of ineffective assistance of counsel. 
People v. Guest
, 166 Ill. 2d 381, 394 (1995). This general rule is predicated upon our recognition that the right to effective assistance of counsel refers to “competent, not perfect representation.” 
People v. Stewart
, 104 Ill. 2d 463, 492 (1984). Hence, “ ‘[m]istakes in trial strategy or tactics or in judgment do not of themselves render the representation incompetent.’ ” 
People v. Hillenbrand
, 121 Ill. 2d 537, 548 (1988). The only exception to this rule is when counsel’s chosen trial strategy is so unsound that “counsel entirely fails to conduct any meaningful adversarial testing.” 
Guest
, 166 Ill. 2d at 394, citing 
People v. Hattery
, 109 Ill. 2d 449, 464 (1985), citing 
United States v. Cronic
, 466 U.S. 648, 656, 80 L. Ed. 2d 657, 666, 104 S. Ct. 2039, 2045 (1984).

Contrary to defendant’s position, our review of the record reveals that trial counsel’s strategy cannot be deemed as so unsound as to lead us to believe that he did not fulfill his constitutional obligation to provide a meaningful adversarial testing of the State’s case. By stipulating to Dr. Lifschultz’s original trial testimony, defense counsel achieved the very goal defendant now urges, 
i.e.
, counsel adduced circumstantial evidence that the victim had been abused prior to her moving in with defendant. During his cross-examination of Dr. Lifschultz, defense counsel asked about the possibility that some of the victim’s external injuries could have been as old as two weeks. Dr. Lifschultz did not discount the fact that some of the injuries could have been that old. We will not second-guess counsel’s decision to adduce this evidence through the use of the very doctor who, not only was an expert in pathology, but also performed the victim’s autopsy and personally examined the victim’s injuries.

Moreover, even if we were to assume that counsel’s decision on this matter was deficient, we remain unconvinced that the forensic expert’s testimony, if presented, would have created the requisite “reasonable probability” that the outcome of the trial would have been different. As noted above, trial counsel was able, during his cross-examination of Dr. Lifschultz, to bring out the fact that some of the victim’s external injuries were older than others. Counsel further argued this point to the trial judge during closing. Thus, the additional testimony that defendant now suggests should have been presented would only have been cumulative of the findings related to the trier of fact by Dr. Lifschultz. In other words, the evidence that defendant says an independent expert would have provided (and would have corroborated the defense theory of the case) was in the trial record, in the form of Dr. Lifschultz’s testimony. For this reason, we cannot say that, had trial counsel presented the testimony of an independent forensic expert, a reasonable probability exists that the trial’s outcome would have been different.

In light of the above, we hold that defendant’s post-conviction allegations concerning trial counsel’s failure to retain a forensic expert do not warrant the granting of an evidentiary hearing. Moreover, the circuit court did not abuse its discretion in denying defendant’s request for a forensic expert.

Sentencing Errors

Defendant argues that the circuit court incorrectly dismissed his first claim of ineffective assistance of counsel on direct appeal. In that claim, defendant alleges that he was denied effective representation on direct review because his appellate attorney did not argue that the State failed to prove, beyond a reasonable doubt, the existence of a statutory aggravating factor necessary to establish his eligibility for the death penalty.

The State responds that review of this claim is procedurally barred because it could have been raised on direct appeal. As we noted above, the scope of post-conviction review is limited to constitutional matters that have not been, and could not have been, previously adjudicated. We agree with the State that this type of argument is normally apparent from the face of the trial record and, as such, could have been raised in defendant’s direct appeal. However, defendant specifically alleged in his amended post-conviction petition that appellate counsel’s failure to raise this issue represents ineffective assistance of appellate counsel, a claim that is cognizable under the Act. 
People v. Mack
, 167 Ill. 2d 525, 531-32 (1995) (and cases cited therein). For this reason, we must reject the State’s procedural default argument and address the merits of the claim.

Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel. 
People v. Coleman
, 168 Ill. 2d 509, 523 (1995); 
People v. Foster
, 168 Ill. 2d 465, 474-75 (1995). A defendant who contends that appellate counsel rendered ineffective assistance must show that the failure to raise the issue was objectively unreasonable and that the decision prejudiced the defendant. 
People v. Flores
, 153 Ill. 2d 264, 283 (1992). Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel’s appraisal of the merits is patently wrong. 
People v. Collins
, 153 Ill. 2d 130, 140 (1992). Accordingly, unless the underlying issue is meritorious, defendant will not be said to have suffered prejudice from counsel’s failure to raise it on appeal. 
Coleman
, 168 Ill. 2d at 523, citing 
People v. Winsett
, 153 Ill. 2d 335, 347 (1992). We, therefore, must determine whether appellate counsel would have presented a successful challenge to the sufficiency of the evidence with respect to defendant’s death-eligibility on direct review, had he raised the claim at that time.

When a capital sentencing hearing is conducted before a jury, a defendant can be found eligible for the death penalty only if the jury unanimously finds that the State has proven beyond a reasonable doubt that defendant was at least 18 years of age at the time of the commission of the offense and that at least one statutory aggravating factor exists. Ill. Rev. Stat. 1985, ch. 38, pars. 9–1(f), (g);
 People v. Simms
, 143 Ill. 2d 154, 169 (1991). In this case, defendant’s eligibility for the death penalty was predicated upon the statutory aggravating factor set out in section 9–1(b)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9–1(b)(3)). At the time of his trial, section 9–1(b)(3) authorized the imposition of the death penalty where the defendant has been convicted of murdering two or more individuals and the deaths “were the result of either an intent to kill more than one person 
or of separate premeditated acts
.” (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 9–1(b)(3). This court has construed the language of section 9–1(b)(3) as including the mental state of knowledge as well as intent. 
People v. Davis
, 95 Ill. 2d 1, 31-36 (1983). Section 9–1(b)(3), therefore, allows the death penalty to be imposed where the defendant acted with knowledge that his acts would result in death or great bodily harm, or with the intent to kill. This means that, at the eligibility phase of the hearing, the State is required to prove beyond a reasonable doubt not only defendant’s conviction for two or more murders, but also a culpable mental state, 
i.e.
, intent or knowledge, at the time of those crimes. 
People v. Edgeston
, 157 Ill. 2d 201, 224 (1993).

As noted above, the crux of defendant’s ineffective-assistance claim is that the evidence of death-eligibility was insufficient to support the jury’s verdict. The standard of review to be applied is whether, after viewing all of the evidence in the light most favorable to the prosecution, any rationale trier of fact could have found the elements necessary to establish defendant’s eligibility for the death penalty beyond a reasonable doubt. 
People v. Pasch
, 152 Ill. 2d 133, 213-14 (1992).

At the eligibility phase of the sentence hearing, the State first presented the testimony of Detective Thomas McCarthy, who stated that in January and February 1977 he was involved in the homicide investigation of Gladys Jones. During the course of that investigation, defendant was arrested and charged in connection with the murder. Detective McCarthy identified defendant in court as the man arrested in the Jones case. Detective McCarthy then stated that he was in the circuit court of Cook County on February 23, 1978, when defendant “plead [
sic
] guilty” and received a 14-year sentence. According to Detective McCarthy, defendant pled guilty to “murder.”

Detective McCarthy also testified that he was involved in the January 1986 investigation of the homicide of Shardae Harris. Detective McCarthy stated that defendant was arrested and charged in connection with that murder. Detective McCarthy added that he was in the circuit court on March 24, 1987, when defendant was found guilty of the Harris murder. Moreover, the Harris murder, according to Detective McCarthy, was “a separate and distinct murder from the first murder of Gladys Jones.” Detective McCarthy identified People’s Exhibit 1, a Xerox copy of defendant’s birth certificate, which established defendant’s date of birth as January 1, 1959. McCarthy also identified People’s Exhibit 2, which was a certified statement of defendant’s conviction for the murder of Gladys Jones, a murder referred to by the prosecutor as the “first” murder.

The parties then agreed to present the remainder of the evidence by way of stipulation. First, the parties agreed that Linda Madison, if called to testify, would state that she was an official court reporter for the circuit court of Cook County and that she was in court on March 24, 1987, when defendant testified that he was 27 years old. The parties also agreed that “if Mr. Richard Kurz, Clerk of the Circuit Court of Cook County, in Judge Mahon’s courtroom were called to testify, he would testify that on March 24, 1987, [defendant] was found guilty of murder in that he, without lawful justification, intentionally and knowingly beat and killed Shardae Harris with his hands. And that he was found guilty of that count of the information in this courtroom on that date.” The court then admitted into evidence both exhibits, and the State rested its case. Defendant did not offer any evidence.

Following closing arguments, the jury returned a verdict unanimously finding beyond a reasonable doubt that defendant had attained the age of 18 at the time he committed the offense of murder and that the defendant had been convicted of murdering two or more individuals as the result of either an intent to kill more than one person or of separate intentional and knowing acts.

Defendant believes that the above evidence does not establish beyond a reasonable doubt that he possessed the requisite mental state with respect to the 1977 murder of Gladys Jones. He maintains that the certified copy of conviction entered upon his plea of guilty to the murder of Gladys Jones is insufficient, in and of itself, to establish that, in causing Jones’ death, he acted with intent or knowledge of death or great bodily harm. The certified copy of conviction is not a part of the record on appeal. In this regard, we note the following stipulation entered into by the State and defendant and filed with this court on May 4, 1999:

“The parties, through their undersigned counsel, stipulate that People’s Exhibit Number 2 that was introduced at the sentencing hearing in this cause is a certified copy of conviction that stated that [defendant] Paul West, had been convicted of the 1977 murder of Gladys Jones under Ill. Rev. Stat. 1977, ch. 38, par. 9–1(a). The parties further stipulate that nothing in People’s Exhibit Number 2 indicates whether the conviction was under Ill. Rev. Stat. 1977, ch 38 par. 9–1(a)(1), 9–1(a)(2), or 9–1(a)(3). The parties agree that either party can withdraw its stipulation if People’s Exhibit 2 is located and made a part of the record in this case.”

The parties have not sought to withdraw this stipulation.

Our review of the record reveals that the evidence presented at the hearing clearly established that defendant was 18 years old and had been convicted of two or more murders. Defendant’s birth certificate is proof that defendant had attained the age of 18 at the time of the murder for which the death penalty was sought. Moreover, both the testimony of the witnesses and the documentary evidence established that defendant had twice been convicted of murder. This court has held that the term conviction, as used in section 9–1(b)(3), means “ ‘a judgment of conviction *** entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury.’ ” 
People v. Franklin
, 135 Ill. 2d 78, 106 (1990), quoting Ill. Rev. Stat. 1979, ch. 38, par. 1005–1–5. The evidence adduced at the hearing established that defendant had two convictions for murder, one entered on February 23, 1978, and another entered on March 24, 1987. The certified copy of conviction, coupled with Detective McCarthy’s testimony, is proof of the 1978 conviction, and the stipulated testimony of circuit court clerk Kurz, in addition to Detective McCarthy’s testimony, is proof of the 1987 conviction. This court has held that “[t]he ‘conviction’ element of section 9–1(b)(3) is satisfied when there is proof that a trial judge has entered judgment on a verdict of guilty of murder. [Citation.] Whether the defendant acted with the requisite mental state is a separate issue.” 
People v. Hope
, 168 Ill. 2d 1, 35-37 (1995). The stipulation of circuit court clerk Kurz is proof that defendant knowingly or intentionally killed the victim from the 1986 murder, Shardae Harris. The problem in this case rests with whether the State proved that defendant killed Gladys Jones either with the intent to kill or with knowledge that his acts would cause death or great bodily harm.

The State, relying on 
People v. Thompkins
, 121 Ill. 2d 401 (1988), contends that this court should view the 1978 certified copy of conviction as a general finding of guilty, which triggers the presumption that the defendant intentionally murdered Gladys Jones. In 
Thompkins
, the sentencing body, the trial judge, found that defendant possessed the requisite 
mens rea
 for death-eligibility after taking judicial notice of the jury’s general verdict, returned at the guilt phase of the trial. 
Thompkins
, 121 Ill. 2d at 455. Upon review, this court held that when, after the guilt phase of a trial, a jury returns a general verdict of guilty after being instructed on intentional, knowing and felony murder arising out of a single transaction and the sentencing judge takes judicial notice of that verdict, the presumption exists that the jury found defendant guilty of the intentional murder. 
Thompkins
, 121 Ill. 2d at 455. See also
 People v. Shatner
, 174 Ill. 2d 133, 150-51 (1996) (holding that presumption arises when general verdict is supported by indictment establishing that the fact finder at the guilt phase was instructed on all three bases for murder).

In our view, cases such as 
Thompkins
 and 
Shatner
 are not controlling under the circumstances presented in the case at bar. Here, we do not have a jury’s general verdict rendered after the jury was fully instructed on the various types of murder upon which defendant was originally charged. Instead, we have a certified copy of conviction entered upon a plea of guilty. What cannot be discerned from the certified copy of conviction (or from the stipulation of the parties filed in this court) is under what theory of murder the judge in 1978 accepted defendant’s plea. At the time of defendant’s 1978 conviction, a person could be found guilty of murder under three different theories, two of which required a specific 
mens rea
 and the third, felony murder, which required none. See Ill. Rev. Stat. 1977, ch. 38, par. 9–1(a). Without more information, we cannot presume that defendant pleaded guilty to intentional or knowing conduct because we do not know if the State even charged him with such conduct. This is so because the State did not present any evidence from which the presumption could have been raised or the necessary inference been made. See 
People v. McDonald
, 168 Ill. 2d 420, 451 (1995) (holding that evidence was sufficient for eligibility under section 9–1(b)(3) because, 
inter alia
, the record revealed that defendant had been indicted and tried for intentional, knowing, and felony murder; therefore, general verdict supported the finding of guilty as charged on each count). Here, the certified copy of conviction tells us only that a judgment was entered against defendant in 1978 on the offense of murder. It does not, however, tell us whether the conviction resulted from defendant’s intent to kill Gladys Jones or from defendant’s knowledge that his actions would cause either death or great bodily harm to Gladys Jones or from defendant’s killing of Gladys Jones during the commission of a felony.

We note that this court was presented with a very similar challenge to the sufficiency of the evidence in 
People v. Johnson
, 159 Ill. 2d 97 (1994). There, the defendant claimed that the certified copy of conviction did not conclusively establish that defendant had acted with intent or knowledge that his acts would cause death or create a strong probability of great bodily harm. 
Johnson
, 159 Ill. 2d at 129. We rejected the argument because the record revealed that the State had read to the sentencing jury defendant Johnson’s 1974 indictment to murder and armed robbery. The indictment set out three separate counts of murder: intentional murder, knowing murder, and murder committed during the course of an armed robbery, 
i.e.
, felony murder. Because defendant’s plea of guilty was not restricted to the felony-murder count, we concluded that the jury “was apprised that defendant’s plea of guilty applied to the knowing and intentional murder counts as well as murder in the course of armed robbery.” 
Johnson
, 159 Ill. 2d at 129. We upheld the verdict on this basis.

Unlike the prosecution in 
Johnson
, the State here failed to offer into evidence the indictment or the information that was used to charge defendant with the Jones murder. We, therefore, cannot say that the jury was “apprised” that defendant’s plea applied to either a knowing or an intentional murder. We simply lack any evidence of record that establishes under what theory of murder defendant was charged or convicted. Indeed, our review of the record reveals that not one scintilla of evidence was ever presented to the jury during the State’s case in chief during the eligibility phase of the hearing with respect to the issue of defendant’s 
mens rea
 at the time of the Jones murder.
(footnote: 1) Detective McCarthy testified only that he was involved in the Jones homicide investigation and that defendant was arrested and subsequently pled guilty for that murder. Detective McCarthy never once revealed any of the facts surrounding the Jones murder from which the jury may have inferred that the defendant’s actions which resulted in his murder conviction arose from an intent to kill or were committed with knowledge of death or great bodily harm. Nor did any of the witnesses who testified by way of stipulation reveal any facts from which the requisite 
mens rea
 could be inferred with respect to the Jones murder. See 
Hope
, 168 Ill. 2d at 37 (detailing evidence from which a jury could find that defendant’s conduct in killing the victim resulted from an intent to commit murder or from knowledge of death or great bodily harm). The State did not offer into evidence the transcript from the February 1978 plea proceeding, which should have contained, pursuant to Supreme Court Rule 402, the circuit court’s determination that there was a factual basis for the plea. See 177 Ill. 2d R. 402(c). Such a factual basis could have provided the jury with enough details upon which to infer that defendant’s conduct in killing Gladys Jones was intentional or knowing. In our view, the State could have used any one of these methods in establishing defendant’s requisite mental state with respect to the Jones murder. We, therefore, agree with defendant that the evidence was insufficient to establish his eligibility for the death penalty under section 9–1(b)(3).

Notwithstanding the above, the State contends that, during rebuttal closing argument, the prosecutor told the jury that defendant had “been convicted twice of two intentional murders.” Although the State concedes that elsewhere in the closing argument the prosecutor omitted any reference to the requisite 
mens rea
, the State nevertheless maintains that the rebuttal argument served to “set the record straight” by informing the jury that “the State had proved [defendant] committed two intentional murders.” The State also points out that the jury here was adequately instructed as to all of the necessary elements concerning eligibility under section 9–1(b)(3) and returned a legally correct verdict form which found that defendant possessed the requisite mental state. In light of the above, the State contends that “there was sufficient evidence upon which the jury could base its finding of eligibility.” This argument, however, falls wide of the mark.

Initially, counsel’s closing argument is not evidence (
People v. Henderson
, 142 Ill. 2d 258, 324-25 (1990)), a legal point on which the trial judge correctly instructed defendant’s jury. Parenthetically, as we pointed out above, the State failed to introduce any evidence that could support the inference that defendant acted with the requisite mental state when he committed the Jones murder. A closing argument that is not based upon the evidence lacks a proper foundation and is thus improper. 
Henderson
, 142 Ill. 2d at 324-25. In addition, the fact that the jury was correctly instructed and returned a legally correct verdict form is wholly irrelevant in determining whether the State presented sufficient evidence to prove eligibility. In other words, our evaluation of the sufficiency of the evidence does not turn upon whether the jury was properly instructed or whether the verdict form established a legally correct statement as to eligibility.

Finally, the State points out that evidence presented by the prosecution during the aggravation and mitigation phase of the hearing established that defendant either intentionally or knowingly killed Jones. In so arguing, the State relies on 
Cabana v. Bullock
, 474 U.S. 376, 386, 88 L. Ed. 2d 704, 716-17, 106 S. Ct. 689, 697 (1986), for the proposition that a finding of culpability need not be made at any particular stage of the sentence hearing.

Cabana
 holds that the eighth amendment’s proportionality inquiry requires that “at some point in the [state court] process, the requisite factual finding as to the defendant’s culpability [must be] made.” 
Cabana
, 474 U.S. at 387, 88 L. Ed. 2d at 717, 106 S. Ct. at 697. Defendant here is not arguing that his jury did not make the requisite culpability finding, but rather that the evidence adduced by the State at the eligibility phase of the hearing does not support the culpability finding that his jury did, in fact, make with respect to the Jones murder. Although this court has acknowledged that we will independently evaluate the record when a death sentence has been imposed, we have consistently limited our role to that of a court of review. As such, we defer to the findings made in the trial court when there is ample support in the record for those findings. 
People v. Barrow
, 133 Ill. 2d 226, 283 (1989). According to our death penalty statute, the trial judge or the jury has the responsibility of deciding whether a defendant is eligible for a death sentence. Ill. Rev. Stat. 1985, ch. 38, par. 9–1(d). The jury in this case based its finding of eligibility, not on the evidence adduced at the aggravation/mitigation phase of the hearing, but on the evidence adduced at the eligibility phase. We have independently considered that evidence and found that it does not support the jury’s finding that defendant possessed the mental state required under section 9–1(b)(3) when he killed Gladys Jones. According to the death penalty statute, the burden of proving the existence of the statutory aggravating factor necessary for a finding of death-eligibility falls on the State during the first stage of the hearing and that burden is not satisfied unless proved beyond a reasonable doubt. Ill. Rev. Stat. 1985, ch. 38, par. 9–1(f). If the State fails to meet this burden, a defendant cannot be considered eligible for the death penalty, and a term of imprisonment must be given. Ill. Rev. Stat. 1985, ch. 38, par. 9–1(g). In other words, the capital sentencing hearing ends at that point, without even the need for the second aggravation/mitigation phase to begin.

In essence then, the State asks this court to find defendant death-eligible based on evidence that was adduced at the second stage of the sentence hearing. We decline to do so. We have recently held that the Illinois capital sentencing statute does not permit a court of review to usurp the jury’s role as sentencer without damaging defendant’s due process rights. 
People v. Shaw
, 186 Ill. 2d 301, 344 (1998). As we acknowledged in 
Shaw
, our death penalty statute “plainly states that, if a defendant elects to have a jury perform the sentencing function, the jury and the jury alone will determine 
defendant’s eligibility for death
 and whether any mitigating factor or factors should preclude capital punishment.” (Emphasis added.) 
Shaw
, 186 Ill. 2d at 344. Defendant here elected to have a jury make the eligibility finding based upon the evidence presented to it by the State. That evidence, however, does not support the jury’s verdict. We will not attempt to supplement the jury’s finding by referring to evidence that was not before that jury at the time it was asked to deliberate defendant’s death eligibility.

In view of the foregoing, we believe that had appellate counsel challenged the sufficiency of the evidence with respect to the jury’s finding of death eligibility on direct appeal, the challenge would have been successful. While we are cognizant of the fact that appellate attorneys are not required to raise every conceivable argument on appeal, we believe that counsel’s failure to raise this sufficiency of the evidence argument fell below an objective standard of reasonableness associated with professional norms. We further hold that defendant has shown the requisite prejudice under 
Strickland
 by establishing that, had the argument been raised, the claim would have been meritorious. The circuit court, therefore, should have granted defendant post-conviction relief, as a matter of law, on this claim.

Having found that the State failed to establish defendant’s death-eligibility beyond a reasonable doubt, we must next determine what relief must be afforded to defendant. We believe that the result in this case is dictated by tenets announced by this court some 13 years ago, in 
People v. Davis
, 112 Ill. 2d 78 (1986):

“Although principles of double jeopardy generally do not apply to sentencing determinations (
North Carolina v. Pearce
 (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072), the defendant correctly observes that they may be applicable in a capital sentencing hearing (
Arizona v. Rumsey
 (1984), 467 U.S. 203, 81 L. Ed. 2d 164, 104 S. Ct. 2305; 
Bullington v. Missouri
 (1981), 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852). We note that the capital sentencing procedures of this State share many of the characteristics that the Supreme Court has found significant in applying principles of double jeopardy to those sentencing determinations. (See 
Arizona v. Rumsey
 (1984), 467 U.S. 203, 209-11, 81 L. Ed. 2d 164, 170-71, 104 S. Ct. 2305, 2310; 
Bullington v. Missouri
 (1981), 451 U.S. 430, 438, 68 L. Ed. 2d 270, 278-79, 101 S. Ct. 1852, 1858). For example, in the sentencing proceeding here, the State was required to prove, as a prerequisite for a sentence of death, the existence of a statutory aggravating circumstance beyond a reasonable doubt. (See Ill. Rev. Stat. 1979, ch. 38, par. 9–1(f).) Moreover, the usual rules of evidence governed that determination, and the discretion of the sentencing authority–in this case, a jury–was carefully guided. (See Ill. Rev. Stat. 1979, ch. 38, pars. 9–1(e), (g).) The sentencing proceeding was essentially ‘a trial on the issue of punishment’ (
Bullington v. Missouri
 (1981), 451 U.S. 430, 438, 68 L. Ed. 2d 270, 279, 101 S. Ct. 1852, 1858), and therefore 
a determination, either in the trial court or on review, that the defendant was not eligible for the death penalty would have operated as an acquittal on an element essential to a sentence of death
.” (Emphasis added.) 
Davis
, 112 Ill. 2d at 81-82.

Accord 
People v. Levin
, 157 Ill. 2d 138, 144-45 (1993); 
People v. Page
, 155 Ill. 2d 232, 271 (1993).

In other words, once either the trial court or a court of review has determined that the evidence was insufficient to prove the existence of a statutory aggravating factor, the State is precluded by double jeopardy principles from seeking the death penalty again. “Having received ‘one fair opportunity to offer whatever proof it could assemble,’ [citation] the State is not entitled to another.” 
Bullington v. Missouri
, 451 U.S. 430, 446, 68 L. Ed. 2d 270, 283, 101 S. Ct. 1852, 1862 (1981). We therefore remand the matter to the circuit court with directions to vacate defendant’s sentence of death and to resentence defendant to a sentence other than death in accordance with the applicable provisions of the Unified Code of Corrections.

Because of our disposition of defendant’s sufficiency of the evidence claim, we need not address defendant’s remaining claims in which he identified other errors allegedly occurring during the sentencing hearing.

CONCLUSION

The circuit court correctly dismissed defendant’s sole post-conviction claim concerning the guilt phase of his trial proceedings, 
i.e.
, that trial counsel was ineffective for failing to retain an independent forensic expert. The circuit court, however, improperly dismissed defendant’s claim regarding ineffective assistance of appellate counsel with respect to counsel’s failure to raise on direct appeal a challenge to the sufficiency of the death-eligibility evidence. Therefore, we remand the cause to the circuit court for further proceedings consonant with this opinion.

Affirmed in part;

reversed in part;

cause remanded with directions.

FOOTNOTES
1:     
1
Interestingly, the State chose to supplement Detective McCarthy’s testimony, that he was in court when defendant was convicted on March 27, 1987, of the Harris murder, with the stipulated testimony of circuit court clerk Kurz, which related to the jury that defendant “without lawful justification, intentionally and knowingly beat and killed Shardae Harris with his hands.”