NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (4th) 250723-U

NO. 4-25-0723

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 11, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| STANSON N. CARTER, | ) | No. 17CF1255 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher G Perrin, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Vancil and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The Office of the State Appellate Defender was allowed to withdraw where no meritorious issues could be raised on appeal, and the circuit court's first-stage dismissal of defendant's postconviction petition was affirmed.

¶ 2    Defendant Stanson N. Carter was convicted of possession of heroin with intent to deliver and resisting a peace officer and subsequently sentenced to 16 years' imprisonment. On direct appeal, we affirmed his convictions. *People v. Carter*, 2025 IL App (4th) 231308-U, ¶ 81. Defendant filed a postconviction petition that was summarily dismissed at the first stage, and he now appeals that dismissal. Appointed appellate counsel has moved to withdraw, asserting that there is no nonfrivolous argument that can be raised on appeal. Defendant was sent notice of counsel's request to withdraw and has not responded. For the reasons that follow, we grant counsel's motion to withdraw and affirm the circuit court's summary dismissal of defendant's

postconviction petition.

¶ 3                                  I. BACKGROUND

¶ 4          In December 2017, defendant was charged in a three-count information with unlawful possession with intent to deliver a controlled substance (heroin) (720 ILCS 570/401(a)(1)(A) (West 2016)), unlawful possession of a controlled substance (heroin) (*id.* § 402(a)(1)(A)), and resisting a peace officer (720 ILCS 5/31-1(a) (West 2016)). The charges stemmed from a traffic stop that escalated into a foot chase.

¶ 5                            A. Trial Court Proceedings

¶ 6          At the preliminary hearing, Chris Owen, a lieutenant colonel with the Illinois State Police (ISP), was called to testify. Owen pulled over defendant's vehicle for following other traffic too closely while traveling on Interstate 55. Before the traffic stop concluded, defendant fled into a nearby farm field. Defendant "disappear[ed]" from his sight when entering a small brush area in the field. Shortly thereafter, he was able to locate defendant. Owen observed defendant on his knees but could not see his hands. Owen drew his weapon and ordered defendant to "come to me" at which point he was placed in custody. There was dirt on defendant's hands, "as though he had been digging." Officers returned to the area where defendant was detained and found a partially buried bag weighing more than 20 grams, containing a substance that subsequently tested positive for heroin.

¶ 7          Defendant filed a motion seeking to suppress the contents of the partially buried bag, asserting that the statutory basis for the stop (following too closely) was unconstitutionally vague. The trial court denied the motion, and defendant executed a jury waiver. The court admonished defendant, explaining the differences between a bench trial and a jury trial and that it was defendant's choice alone as to which type of trial he would have. Defendant stated he

understood and acknowledged his signature on the jury waiver form.

¶ 8 Defendant filed another motion to suppress, arguing that the officer conducting the traffic stop lacked a reasonable, articulable suspicion that defendant was armed and was therefore unjustified in subjecting him to a pat-down search. Defendant argued that the heroin should be suppressed. During the hearing on the motion, Owen testified that he maintained visual sight of defendant while he was fleeing. The trial court denied the motion.

¶ 9 A bench trial ensued. Owen testified and expounded on what took place at the end of the chase and the events afterward. He found defendant on his hands and knees in a thicket of trees and shrubs about a quarter mile from the interstate and adjacent to a farm field. Owen was "about 40 to 50 yards" away from defendant when he spotted him in the thicket. The ground in that area was a combination of farm field, leaves, and sticks. His view of defendant in the thicket was somewhat obstructed, and he could not see defendant's hands. However, Owen maintained that he was able to see defendant during the entire chase, even when he was in the thicket, although he never saw defendant bury anything.

¶ 10 Owen instructed defendant to crawl out of the thicket towards him and secured defendant in handcuffs. Owen marked the area where defendant was detained with a brick that was in the area. Owen was wearing a recording device during the chase and defendant's arrest, and the resultant video was submitted into evidence.

¶ 11 Owen noticed that defendant's right hand, specifically his thumb and index finger, had mud caked on it, while the other hand was clean. Owen took photographs of the hand, and they were also submitted into evidence. Owen assumed that defendant had been digging in the dirt in the area where he was detained, especially because dirt was present on only one hand. He relayed that information to his fellow officers, and they returned to the scene of defendant's arrest to

continue the search for contraband. The subsequent search located a bag of suspected heroin in the ground "within a few yards" of where defendant was detained. Owen returned to the scene and took custody of the bag of suspected heroin. He weighed the substance at 25.5 grams, and a field test was positive for heroin.

¶ 12 Based on Owen's training and experience, the amount of heroin was more consistent with distribution rather than individual use. End users of heroin typically do not buy "bulk quantity" because they cannot afford it. He believed distributors often kept on hand amounts ranging from an ounce to several kilograms. Owen also recovered two cell phones from defendant's vehicle. The prosecution presented Owen with the exhibits containing, among other things, the cell phones taken from the vehicle and the heroin located during the search. All the items were in substantially the same condition as when he booked them into evidence, and he followed "proper protocols" when booking the items into evidence. Defense counsel noted that he had no objection to the heroin found at the scene, labeled as People's exhibit No. 5, being entered into evidence.

¶ 13 Aaron Roemer testified that in December 2017, he was a forensic scientist employed by the ISP and specialized in drug chemistry. He analyzed the substance found buried in the farm field and submitted into evidence as People's exhibit No. 5. The substance was off-white and chunky, weighed 20.8 grams, and tested positive for heroin. Roemer performed two tests on the substance from two different areas of the container. He did not sample each individual chunk. Roemer described the normal chain-of-custody process involved in transferring a piece of evidence from the ISP to the lab. He stated that he received this exhibit from the ISP and explained that evidence is given a case number when it comes into the lab. He retrieved the exhibit from the vault and made sure it was properly initialed, taking note of the packaging before proceeding with

analysis. He then identified the exhibit as the same one he tested at the lab, noting the matching case number, initials, and packaging. Once he was done testing the item, the same protocols would be followed to return the item to the ISP. The agency would come to the lab and would receive "their returns for that day."

¶ 14　　Following Roemer's testimony, the trial court noted that defendant was previously admonished regarding his jury waiver but decided that "to be safe we should review the *Williams* admonishments." The court then went through the charges and possible penalties defendant faced and explained his right to plead guilty or proceed to trial. The court then reviewed whether any plea offers or counteroffers were made. The State noted that it had offered an open plea with a sentencing cap of 14 years' imprisonment, but the offer was rescinded when the motion to suppress was litigated. Defense counsel stated defendant thought the capped offer was for probation and that former counsel made a counteroffer for a term of probation. The State noted all offers had been rescinded following the motions to suppress, and none had been made since.

¶ 15　　Once the State rested its case-in-chief, defendant moved for a judgment of acquittal, arguing that the evidence was largely circumstantial and that the State had failed to establish a chain of custody for People's exhibit No. 5. Defendant argued there was no evidence regarding how the exhibit made its way from the farm field to the forensic lab. The trial court denied the motion, and the defense rested.

¶ 16　　In closing, defense counsel argued that "random sampling is insufficient to establish the weight of this substance," referencing the seized heroin. Further, the substance was contaminated by officers with "dirt and whatever was already in the bag," so "representative sampling is insufficient to show weight." Counsel cited *People v. Adair*, 406 Ill. App. 3d 133 (2010), asserting "a test must be performed on each sample unless the chemist can testify that

they're sufficiently homogeneous to allow for random samples"; however, "that testimony never happened." Counsel argued the missing testimony was crucial "because the state's only evidence purporting to show intent to deliver is the weight of the substance" but "dirt and suspected heroin were commingled by the officers." To that end, while "there may have been 21 grams of something in the [bag], rocks, dirt, something else. Rocklike chunks of heroin in Exhibit 5, but the state has not proven how much of that was actually heroin."

¶ 17                    B. Trial Court's Ruling, Sentencing, and Posttrial Motions

¶ 18            The trial court found defendant guilty of all charges. Defendant filed a motion for judgment of acquittal or a new trial arguing, among other things, that the court erred in denying the motion to suppress where Owen did not have an articulable, reasonable suspicion justifying a search, that the State failed to establish a chain of custody regarding People's exhibit No. 5, and there was insufficient evidence regarding an intent to deliver. The court denied the motion and proceeded to sentencing, where it imposed a sentence of 16 years' imprisonment. Defendant filed an amended motion to reconsider sentence that was denied.

¶ 19                            C. Direct Appeal

¶ 20            On direct appeal, appellate counsel for defendant argued that the State had failed to establish a foundation and chain of custody for the admission of People's exhibit No. 5. Counsel argued that the error was preserved, but also that it could be addressed as plain error or ineffective assistance of counsel. Counsel also argued that the State had failed to prove defendant's intent to deliver.

¶ 21            On the issues of possession and intent to deliver, we found the evidence was sufficient to sustain the convictions. *Carter*, 2025 IL App (4th) 231308-U, ¶¶ 45, 52. We acknowledged the argument that defendant was gainfully employed and could have bought heroin

in bulk for personal purposes. *Id.* ¶ 49. However, the evidence that indicated that he was gainfully employed at the time of the offense (the presentence investigation report) was not before the court at trial, and the record was devoid of any other financial ability to purchase a large amount of heroin. *Id.* Regarding People's exhibit No. 5, we found that defense counsel's failure to object to admission of the exhibit forfeited this issue. *Id.* ¶ 66 On the merits, even assuming deficient performance, prejudice would require a presumption that the State could not have cured the alleged chain-of-custody deficiency. *Id.* ¶ 68. The record did not support such a conclusion. *Id.* Absent prejudice, defendant was unable to establish first-prong plain error, and the claim was not cognizable as second-prong plain error. *Id.* ¶ 69.

¶ 22                                    D. Postconviction Proceedings

¶ 23            Defendant filed a postconviction petition alleging ineffective assistance of trial and appellate counsel. Defendant alleged trial counsel was ineffective for the failure to (1) object to Owen changing his testimony, (2) admit tax documents provided by defendant that show his work history and income as a basis to purchase the heroin for personal use rather than distribution, (3) subpoena video footage from cameras near the traffic stop that would show the stop was unnecessarily prolonged, (4) negotiate a plea agreement to obtain "a less severe punishment," (5) object to the admission People's exhibit No. 5, because it "was possibly commingled with dirt," (6) object to Roemer's testimony where he "only analyzed one of the chunks in evidence and did not know how much [it] weighed, and how much of [it] could have commingled with dirt," (7) "make a timely objection to chain of custody" to preserve the issue for direct appeal, and (8) object to the admission of People's exhibit No. 5 "after the States Attorney stated off the record that Exhibit 5 may have been contaminated by water when evidence room had a water leak." Regarding appellate counsel for his direct appeal, defendant argued counsel was ineffective for

- 7 -

failing to raise on appeal the issue that defendant "wasn't admonished until the middle of trial." Presumably, this argument revolves around the jury trial waiver, but that is not entirely clear. The petition did not contain any affidavits or exhibits.

¶ 24　　　　The circuit court summarily dismissed the petition at the first stage, finding that defendant's claims were conclusory, unsupported, lacked specificity, and rebutted by the record.

¶ 25　　　　This appeal followed.

¶ 26　　　　　　　　　　　　　　II. ANALYSIS

¶ 27　　　　On appeal, appellate counsel reviews three bases for potential argument and determines that they are without merit: (1) the procedural propriety of the summary dismissal under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 20024)), (2) the sufficiency of the claims of ineffective assistance of trial counsel, and (3) the sufficiency of the claim of ineffective assistance of appellate counsel. We address each matter in turn.

¶ 28　　　　The Act provides a three-stage framework to challenge convictions on grounds that they were the result of a substantial denial of a right under either the United States or Illinois Constitutions or both. *People v. Tate*, 2012 IL 112214, ¶ 8. At the first stage, the circuit court must take as true the allegations in the petition that are not rebutted by the record and determine whether they are frivolous or patently without merit. See *People v. Blair*, 215 Ill. 2d 427, 454 (2005) (noting the allegations in the defendant's summarily dismissed petition were rebutted by the record); *People v. Hodges*, 234 Ill. 2d 1, 10-12 (2009) (noting a petition that is frivolous or patently lacks merit has "no arguable basis either in law or in fact").

¶ 29　　　　The first stage allows the circuit court " 'to act strictly in an administrative capacity by screening out those petitions which are without legal substance or are obviously without merit.' " *Tate*, 2012 IL 112214, ¶ 9 (quoting *People v. Rivera*, 198 Ill. 2d 364, 373 (2001)); 725

ILCS 5/122-2.1(a)(2) (West 2024). "If a petition alleges sufficient facts to state the gist of a constitutional claim, even where the petition lacks formal legal argument or citations to authority, first-stage dismissal is inappropriate." *People v. Allen*, 2015 IL 113135, ¶ 24. We review dismissal at the first stage *de novo*. *Id.* ¶ 19.

¶ 30                                    A. Procedure

¶ 31          Appellate counsel notes that the petition was dismissed within the 90-day window as required by statute and that there is no evidence in the record that the State improperly participated in the dismissal of the petition. See *id.* ¶¶ 21, 33 (noting the statutory 90-day window and that "[n]ot until the second stage is the petition subjected to adversarial testing through the State's involvement"). Having reviewed the record, we agree with counsel's determination on this point and find that there are no nonfrivolous arguments that could be advanced.

¶ 32                          B. Assistance of Trial Counsel

¶ 33          Most of the issues posed in defendant's petition pertain to ineffective assistance of trial counsel, which we evaluate under the familiar two-prong *Strickland* test (see *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (requiring a defendant to establish deficient performance of counsel and resulting prejudice)). To avoid first-stage dismissal, it is a defendant's burden to establish an arguable basis that counsel's performance was deficient and that defendant was prejudiced as a result. *Hodges*, 234 Ill. 2d at 17.

¶ 34                               1. *Testimony of Owen*

¶ 35          Defendant argues that trial counsel was ineffective for failing to object to portions of Owen's testimony during trial that differed from his previous testimony. He essentially frames this argument as a failure to impeach, although he couches the issue in terms of a failure to object. Initially, we observe that this argument does not rely on matters outside the record and therefore

should have been raised on direct appeal under the consequence of waiver. *People v. Simpson*, 204 Ill. 2d 536, 551-52 (2001); *People v. West*, 187 Ill. 2d 418, 425 (1999). Defendant does not allege ineffective assistance of appellate counsel in failing to raise this issue on direct appeal.

¶ 36    Moreover, it is clear that trial counsel chose not to impeach Owen with his prior testimony as a mattery of strategy because the trial testimony was more advantageous to defendant, where Owen testified that he never lost sight of defendant but nonetheless did not see him bury the heroin. See *People v. Franklin*, 167 Ill. 2d 1, 22 (1995) ("Generally, the decision of whether or not to cross-examine or impeach a witness is a matter of trial strategy, which cannot support a claim of ineffective assistance of counsel.").

¶ 37                    2. *Evidence of Defendant's Income*

¶ 38    Next, defendant argues that trial counsel was ineffective for failing to submit as evidence defendant's tax documents that would have shown he had sufficient income to purchase a bulk amount of heroin for personal use and thereby rebut the argument that the purchase was for distribution. Appellate counsel argues that this contention fails because defendant has failed to attach supporting documentation to the petition or explain why he was unable to do so. See *People v. Sanders*, 2016 IL 118123, ¶ 45 ("[A] postconviction petitioner is required to attach to his petition affidavits, records, or other evidence supporting the petition's allegations or state why the same are not attached.") (citing 725 ILCS 5/122-2 (West 2014)). Further counsel posits that defendant fails to argue how these documents would have changed the outcome of the trial or how they would have been admitted into evidence. We agree with the contentions of counsel and find that there is no nonfrivolous argument that could be raised on this point.

¶ 39                    3. *Additional Surveillance Footage*

¶ 40    Defendant also posits that additional surveillance footage would have shown that

Owen prolonged the stop. We agree with counsel that this claim is conclusory and unsupported. Moreover, the dashcam footage of the stop was admitted into evidence. There is no indication that the additional footage would have impacted the admissibility of the heroin. Accordingly, the claim lacks arguable merit.

¶ 41                                            4. *Plea Negotiation*

¶ 42            Defendant argues that trial counsel failed to seek a plea deal to reduce the severity of the punishment. However, the record demonstrates that counsel did, in fact, negotiate with the State, and defendant was offered a plea that capped the possible sentence at 14 years' imprisonment. Further, defendant turned down a plea offer that he understood to be for probation. Both of these plea offers would have been less than the sentence ultimately imposed. Therefore, we agree that this claim lacks arguable merit, as defendant can establish neither deficient performance nor prejudice.

¶ 43               5. *People's Exhibit No. 5—Commingling and Expert Testimony*

¶ 44            Defendant argues that trial counsel was ineffective for failing to object to People's exhibit No. 5 because it was *possibly* comingled with dirt. This argument suffers from the same defect as the one concerning Owen's testimony, where it (1) does not rely on evidence outside of the record, (2) was not raised on direct appeal, and (3) does not allege ineffective assistance of appellate counsel. Accordingly, the argument has been waived. *Simpson*, 204 Ill. 2d 536, 551-52. Moreover, defendant's allegation of commingling is pure speculation and does not support his claim of ineffective assistance. See *People v. Johnson*, 2021 IL 126291, ¶ 55 (noting prejudice cannot be based on speculation or conjecture).

¶ 45            Regarding the expert testimony, defendant argues that trial counsel failed to object to the testimony where the expert "only analyzed one of the chunks in evidence and did not know

how much the individual chunk in evidence weighed, and how much of the chunk in evidence could have commingled with dirt." Again, this argument could have been raised on direct appeal, and the failure to do so means that it is waived. Further, it is apparent that the lack of objection was a matter of trial strategy where counsel argued these exact points in support of a motion for a directed verdict. As appellate counsel now points out, an objection would not have prevented the admission of the expert's testimony and could have only affected the weight it was given. Given that there is no underlying error and the allegation rests on a matter of trial strategy, there is no legal merit to this claim.

¶ 46                6. *People's Exhibit No. 5—Contamination*

¶ 47        Defendant also contends that trial counsel was ineffective for failing to object to People's exhibit No. 5 after the prosecutor commented off the record that the evidence may have been contaminated with water from a leak in the evidence room. However, defendant's claim is conclusory and unsupported. See *Allen*, 2015 IL 113135, ¶¶ 24, 26 (noting that if a petition lacks affidavits, records, or other evidence supporting its allegations and the defendant fails to explain in the pleading why that evidence is not attached, the petition fails to meet the low threshold to avoid summary dismissal). This claim lacks arguable merit.

¶ 48                7. *People's Exhibit No. 5—Chain of Custody and Direct Appeal*

¶ 49        The final argument in this vein is that trial counsel was ineffective in failing to object to the admission of People's exhibit No. 5. This issue was presented on direct appeal, and we found the argument was "easily dispensed with" by looking to *People v. Aquisto*, 2022 IL App (4th) 200081, ¶¶ 25, 53, 64, where defendant could not establish prejudice absent a reasonable probability that, if the chain-of-custody objection was made, the State could not cure the objection. *Carter*, 2025 IL App (4th) 231308-U, ¶ 68. Defendant failed to direct us to a basis showing that

the State would have been incapable of curing any chain-of-custody objection in the direct appeal, and his petition merely repeats this misstep. There is no nonfrivolous argument that can be raised on this point.

¶ 50                                    C. Assistance of Appellate Counsel

¶ 51            Finally, defendant claims appellate counsel for his direct appeal was ineffective in failing to raise the issue that he "wasn't admonished until the middle of trial." This claim is evaluated under the same *Strickland* standard as the ineffective assistance of trial counsel claim. *West*, 187 Ill. 2d at 435. "Appellate counsel is not obligated to brief and argue every conceivable issue on appeal, and a defendant cannot claim prejudice based on appellate counsel's failure to raise an issue that is not meritorious." *People v. Pingelton*, 2022 IL 127680, ¶ 64.

¶ 52            Defendant does not argue that the trial court failed to issue admonishments at the appropriate time or omitted any relevant admonishments. Instead, it appears that he takes issue with the cautionary "*Williams* admonishments" given by the trial court midtrial. Defendant fails to allege that he was prejudiced by receiving these cautionary admonishments or that the timing of these admonishments impacted the outcome of the case. In relation to his jury waiver, he was admonished and signed a written jury waiver when he waived his right to a jury trial. Defendant fails to articulate how the trial court erred in issuing admonishments. We agree with counsel that this argument lacks legal merit.

¶ 53                                    III. CONCLUSION

¶ 54            For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the circuit court's judgment.

¶ 55            Affirmed.