NOTICE

Decision filed 06/08/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190199-U

NO. 5-19-0199

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 18-CF-311 |
| | ) | |
| NATHAN R. HALL, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction is affirmed where any deficiencies in defense counsel's performance did not undermine reliance on the trial outcome and defendant's claims of prosecutorial misconduct revealed no error. The trial court did not abuse its discretion in refusing defendant's lesser included offense jury instruction where there was no evidence that would allow the jury to rationally acquit the defendant of dissemination of child pornography.

¶ 2    Following a jury trial, defendant, Nathan R. Hall, was convicted of child pornography (720 ILCS 5/11-20.1(a)(2) (West 2018)) and was sentenced to 20 years' imprisonment. Defendant appeals, arguing that he had ineffective assistance of counsel, he was denied a fair trial due to prosecutorial misconduct, and the trial court erred by

1

denying his request to instruct the jury on the lesser included offense of possession of child pornography. For the following reasons, we disagree.

¶ 3                                                    I. BACKGROUND

¶ 4    On July 12, 2018, defendant was charged with one count of child pornography (*id.*), a Class X felony, in that he disseminated pornography involving a child he knew was under the age of 13. On July 24, 2018, he was indicted by a grand jury for this offense. Defense counsel was appointed. Defendant pled not guilty, and the case was set for jury trial. The day before trial, the State moved to amend the bill of indictment to replace "an act of masturbation" with "any act of sexual contact involving the mouth, anus or sex organs of the child and the sex organs of another person." The amendment was granted over defendant's objection.

¶ 5    At trial, the State's first witness was Detective Bobby Wallace, a 15-year law enforcement officer and member of the Internet Crimes Against Children Task Force. Detective Wallace had specialized training in the investigation of online-based offenses involving the exploitation of children and was certified to run investigative software using a peer-to-peer network to search for child pornography files. He explained how peer-to-peer networks allowed for sharing of downloaded files within the network and further explained that while investigating child exploitation, he used software that automatically downloaded the files detected by his software as child pornography. He confirmed that his software used a "single source download" to limit the download from one computer or one Internet protocol (IP) address.

2

¶ 6    Detective Wallace testified that on June 19, 2018, he reviewed his computer history and found a download in the area. Upon review of the video, he recognized what he believed was child pornography. He then reviewed the log file to obtain the IP address and the date the video was downloaded, and he determined that all the video pieces were successfully downloaded. Detective Wallace testified that the IP address was assigned to Charter Communications (Charter) in Mt. Vernon, Illinois, and Charter's response to a subpoena provided him with documents revealing the IP address was assigned to defendant. The summary of the log file stemming from Detective Wallace's search was published, without objection, to the jury. Thereafter, Detective Wallace explained the contents of the log file to the jury showing the login by defendant and the file downloaded.

¶ 7    Detective Wallace explained that his computer recognized the download as suspected child pornography by the hashtag value assigned by the child victim identification program (CVIP). The detective testified that in addition to the hashtag value, the name of the file also implied the file was child pornography. The title of the video was "Moscow 5-1 (VHS 5) 7YO daughter pedo mom—(rare dad and daughter PTHC video)." The detective explained that "PTHC" was an acronym known in the child pornography world as "pre-teen hard core." The log file and the records from Charter were admitted into evidence without objection.

¶ 8    Detective Wallace averred that after receiving the records, he obtained a search warrant for defendant's residence. He confirmed that a computer and five hard drives were seized during the search, and this evidence, along with the video downloaded from

defendant's computer, was taken to the Illinois Attorney General's Office for processing at the Springfield computer forensics lab. The video was admitted into evidence without objection. The State moved to publish the video to the jury, and the full 21-minute video was played for the jury without objection.

¶ 9 Detective Wallace testified that after completing the search warrant, defendant was taken to the sheriff's office for questioning. The interview, performed by Detective Wallace and Investigator Tom Bergola of the Attorney General's office, was audio and video recorded. Wallace stated that during the interview, defendant confirmed, multiple times, that he was aware the program used to obtain the video was a file sharing program but that he did not know how to turn it off. Wallace further stated that during the interview, defendant also confirmed that he viewed child pornography, would masturbate to it, and then delete the video after viewing. The State moved to admit and publish the interview video. Defense counsel did not object to either; however, following a sidebar, both parties agreed to stop the video prior to defendant's comments about bail. Thereafter, the interview video was published to the jury.

¶ 10 On cross-examination, Detective Wallace agreed that some children in pornographic videos were eventually identified and those videos were named for that child. In those instances, the age of the child was verified. Detective Wallace confirmed that the video downloaded from defendant's computer was not part of any series and the age of the child in the video was unknown. He agreed that the title of a video did not necessarily provide the correct age. Detective Wallace averred that based on his training and experience, he believed the child was under the age of 13 and was definitely under

4

the age of 18. Detective Wallace explained that a file could not be shared while it was downloading but was shareable as soon as it downloaded. Detective Wallace asserted that defendant understood the file would be shareable once it was downloaded.

¶ 11    Detective Wallace averred that he did not believe defendant's video download was a one-time incident. In addition to defendant admitting during the police interview of monthly downloads beginning when he was 15 years old, Detective Wallace also intercepted two other interrupted downloads that went to defendant's IP address. Wallace confirmed the two downloads were also pornographic films based on the titles of the videos and their content.

¶ 12    The State next called Siobhan McCarthy (McCarthy), a senior computer evidence recovery technician in the High Tech Crimes Bureau from the Illinois Attorney General's Office, as a witness. McCarthy's job included retrieving, identifying, and preserving digital evidence. McCarthy received five hard drives from the search at defendant's residence and reviewed all of one hard drive and most of a second. McCarthy confirmed that the drives did not contain any child pornography but did have adult pornography and Hentai. McCarthy explained that Hentai was a Japanese anime style of pornographic images. McCarthy found 400 Hentai images on defendant's hard drive. After confirming that the five images marked by the State as evidence were the same five images McCarthy retrieved from the computer, the images were admitted and published to the jury without objection. McCarthy confirmed that all five published images were Hentai, and that Hentai was not illegal.

5

¶ 13 Following McCarthy's testimony, the State rested. Defendant moved for a directed verdict based on, *inter alia*, Detective Wallace's testimony that it was possible the child was over the age of 13. The State objected. After considering the parties' arguments, the trial court denied defendant's motion.

¶ 14 Following admonitions from the trial court about testifying, defendant confirmed his desire to testify and took the stand. During his testimony, defendant confirmed, *inter alia*, that he was aware during the police interview that he was being investigated for child pornography. Defendant admitted downloading child pornography using the shared network program and confirmed the video shown to the jury was downloaded to his computer. Defendant further admitted that he accepted the shared network's "terms of use" but insisted he did not read them prior to accepting them and was unaware of any way to download the videos without them being shareable. Defendant stated that he did not knowingly let other people download the films from him and that typically he would download, watch, and then delete the videos. Contrary to his statement during the police interview, defendant denied masturbating to the video and stated he only told investigators that because he figured he was going to jail so he just went along with what they were saying.

¶ 15 When asked why he specifically downloaded child pornography, defendant replied:

"Well, I don't just download pornography. I read all kinds of stories and things like that but in order to understand things, you often have to view them, and

6

sometimes that means going through and viewing things that you or most people would find disgusting so that you could understand why they find it disgusting."

¶ 16   Defendant testified that he understood possessing child pornography was illegal in Illinois and that he did not knowingly share the video with Detective Wallace. Defendant averred that he first watched child pornography by mistake when he was 15 years old and that he did not know what it was. Defendant testified that when he first watched it, like a lot of people, he was repulsed by it. But afterwards, he was thinking about why it repulsed him and why he found it disgusting. So, he watched it again, because he was curious about it and wanted to understand why people hated it so much and why he was repulsed by it the first time. When asked if he had learned about people's behaviors and why people were repulsed by it, defendant said, "Not really ***."

¶ 17   On cross-examination, defendant clarified that his interest was not child pornography, but was "porn in general." He explained that he did not just watch child pornography; he watched all forms of pornography and read about it. Defendant disagreed that it took him 16 years to figure out that child pornography repulsed people. Defendant testified that he watched child pornography because he wanted to know why it repulsed people and he still had not figured out why people thought it was repulsive. When asked if he found it repulsive, defendant replied it "bothered him a little bit because he didn't think anyone should be forced to do anything they did not want to do." Defendant averred he did not know if the girl in the video was doing it on her own free will but that she probably was not. Defendant agreed that he still downloaded child pornography and watched it. After admitting that the video watched by the jury involved

7

a little girl that was having sex or having sexual contact with the man's penis, and further admitting that the video depicted the little girl with a penis in and around her mouth and slightly in and around her anus, the following recitation occurred:

"Q. And you still can't figure out why that repulses people?
A. I can a little bit, but I want to understand the behaviors behind that, not just that it repulses people."

¶ 18 Defendant agreed that over the last 16 years he had downloaded approximately 198 videos. Defendant stated that he was studying human behavior while watching the videos. Thereafter, the following exchange occurred:

"Q. But—and you don't masturbate to it?
A. Yes.
Q. Because that would be repulsive, right?
A. Yes.
Q. And you don't want to be considered repulsive; do you?
A. Right.
Q. So to admit that would then make this jury think you are repulsive, and you don't want that?
A. Yeah.
Q. You stated that you were just going along with what the officers stated?
A. Yes, ma'am."

¶ 19 Defendant agreed that he used the search term acronyms discussed by Detective Wallace to search for child pornography and confirmed the detective's interpretation of the acronyms. He agreed that preteen meant before a teenager and that some of them could have been under the age of 13. He confirmed his statement during the police interview that most of the child pornography he viewed involved children who were 10, 11, or 12 years old and agreed it was possible some of them were younger. He confirmed that the child pornography was his own, not anyone else's who lived at the residence. Defendant agreed that someone could only get the files if they were not deleted from his

computer. He agreed that he knew it was child pornography and that it was shareable. Defendant said he did not intend to share the file but conceded he did not get the film deleted in time. Thereafter, the defense rested.

¶ 20 The State presented no rebuttal, and during the jury instruction conference, the defendant presented instructions for a lesser included charge of possession of child pornography. The State objected and moved to amend the bill of indictment. Defense counsel objected to the amendment. Following argument, the court granted the State's motion to amend the charging instruction and denied defendant's requested lesser included offense instructions.

¶ 21 After completing jury instructions, the parties presented their closing arguments. The State argued that it proved the elements of the crime via Officer Wallace's testimony, the police interview with defendant, and defendant's testimony. The State addressed defendant's testimony which confirmed the video the jury watched had been on his computer and shared to Detective Wallace's computer as well as defendant's admissions about specific scenes in the video and his testimony confirming the video was child pornography. The State addressed the age of the child in the video by discussing the video, defendant's statements during the police interview, defendant's testimony at trial, the title of the video, and the search terms used by defendant. The State then concluded by stating:

"So the defendant has confessed to you each and every element that I have to prove. He confessed it to you yesterday. Why? Why come in here and take the stand just to confess it all? Because he doesn't want you to find him repulsive.

9

That's what he told you. He somehow in his mind thinks child pornography is okay, and I don't want you guys to think that I masturbate to it because that would be repulsive. I don't have to prove that he masturbated to it. That is not an element. But you guys are still going to find that repulsive. The common person is going to find that repulsive no matter what you are doing with it.

And if after 16 years of studying human behavior you can't figure out that that's repulsive, then there's nothing that is going to change that. But he thought if he got on the stand and explained that to you, you too would not find him repulsive and find him not guilty. But yet, he sat and confessed to every element that I have to prove. That's why I would ask that you to return a verdict of guilty."

¶ 22 Defense counsel's closing argument noted the State's use of the word "repulsive," saying, "Um, the State's Attorney has used the term repulsive several times in her closing statement, and I imagine many of you, if not all of you, were repulsed by that film. I understand that. I definitely understand that." Thereafter, counsel reminded the jury of its agreement to hold the State to its burden of proof and then requested they do so. The remainder of the argument addressed the age of the child in the video and the evidence related thereto, arguing the State did not prove beyond a reasonable doubt that the child in the video was under the age of 13. The defense concluded by stating, "It is hard to sit here and watch this stuff and hear the evidence, but I ask that your emotions not get in the way of the burden of proof that the State has. You may not like Mr. Hall. You may not like his behavior and that is ok. But the State still has the burden of proof in this case to prove every element and they have not done that."

10

¶ 23   The State noted in its final closing argument that defense counsel did not argue that the video was not disseminated and clarified that the only issue for the jury was the age of the child in the video. After again addressing the evidence, the State concluded, stating, "Once again, ladies and gentlemen, there's not a whole lot to argue to you. They have agreed with every aspect of the State's case except for they want to argue that the individual was under—possibly, possibly over the age of 13, and you all know better. Please find him guilty."

¶ 24   Following deliberations, the jury found defendant was guilty of child pornography. Sentencing was scheduled for December 13, 2018. Prior to the sentencing hearing, defense counsel advised the court that his client wished to file a claim for ineffective assistance of counsel. New counsel was appointed, and the sentencing hearing was held on March 14, 2019, at which time the court sentenced defendant to 20 years' imprisonment.

¶ 25   On March 20, 2019, defendant filed a motion to reconsider requesting a reduced sentence, which was denied by the trial court on May 15, 2019. On May 17, 2019, defendant filed a notice of appeal, and on May 23, 2019, defense counsel filed an amended notice of appeal.

¶ 26                                    II. ANALYSIS

¶ 27   On appeal, defendant claims he was denied due process because his defense counsel was ineffective and the State engaged in prosecutorial misconduct. Defendant also claims the trial court erred by failing to admit his lesser included offense jury

11

instructions. Defendant concedes that all of his arguments were unpreserved and therefore requests plain error review.

¶ 28                      A. Ineffective Assistance of Counsel

¶ 29    Defendant claims he was denied his constitutional right to effective assistance of trial counsel. Specifically, he claims his attorney was ineffective by failing to object to (1) the State playing the full 21-minute child pornography video to the jury, (2) the State repeatedly calling defendant and his behavior "repulsive," (3) the State's submission of legal Hentai images from his computer, and (4) the State's questions posed to defendant on the elements of child pornography after defendant already admitted the video was child pornography.

¶ 30    Every criminal defendant has a constitutional right to receive effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland v. Washington*, 466 U.S. 668, 685 (1984). Defendants are entitled to "reasonable, not perfect, representation." *People v. Fuller*, 205 Ill. 2d 308, 331 (2002). To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy a two-prong test and establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced defendant. *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984) (adopting the standard enunciated in *Strickland*, 466 U.S. 668). Our review is *de novo*. *People v. Bates*, 2018 IL App (4th) 160255, ¶ 46.

¶ 31    As to the first prong, the defendant "must overcome the strong presumption that the challenged action, or inaction, might have been the product of sound trial strategy." *People v. Jackson*, 205 Ill. 2d 257, 259 (2001). Given the "variety of factors that go into

12

any determination of trial strategy," a claim "of ineffective assistance of counsel must be judged on a circumstance-specific basis, viewed not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions on review." *Fuller*, 205 Ill. 2d at 331. As to the second prong, the defendant must prove that, "but for counsel's unprofessional errors," there is a reasonable probability that the trial court proceeding would have been different. (Internal quotation marks omitted.) *People v. Peeples*, 205 Ill. 2d 480, 513 (2002). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

¶ 32    Decisions concerning witnesses and evidence are the types of decisions that are considered matters of trial strategy and are generally immune from claims of ineffective assistance of counsel. *People v. West*, 187 Ill. 2d 418, 432 (1999). "Mistakes in trial strategy or tactics or in judgment do not of themselves render the representation incompetent." (Internal quotation marks omitted.) *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988). "The only exception to this rule is when counsel's chosen trial strategy is so unsound 'that counsel entirely fails to conduct any meaningful adversarial testing.' " *West*, 187 Ill. 2d at 432-33 (quoting *People v. Guest*, 166 Ill. 2d 381, 394 (1995)).

¶ 33    In this case, the defendant's claims of ineffective assistance of counsel are based on trial counsel's alleged failure to object to certain evidence submitted by the State as well as statements made by the State. "As a general rule, trial strategy encompasses decisions such as what matters to object to and when to object." *People v. Pecoraro*, 144 Ill. 2d 1, 13 (1991). Here, defendant's trial strategy can be summarized as two defenses:

13

(1) the child in the video was not under the age of 13 and (2) the defendant did not intend to disseminate the video. We address each of defendant's claims, in turn.

¶ 34 First, defendant contends defense counsel was ineffective for failing to object to the State's questions posed to him during cross-examination regarding the acts shown in the video. Specifically, the State asked defendant:

> "Q. *** So you admit that the video that this jury watched was in fact a little girl that's having sex or having sexual contact with a male's penis, correct?
> A. Yes, ma'am.
> Q. And you agree that the video that they watched is of a little girl having a male penis put in her mouth and around her mouth, correct?
> A. Yes, ma'am.
> Q. And you agree that the video that they watched is of a little girl with a penis around and in her anus slightly, correct?
> A. Yes, ma'am."

¶ 35 Here, however, defendant was admonished of the risks of testifying and of his right to remain silent prior to testifying. The State's questions were relevant to the issues presented at trial and the matters raised on direct examination. We do not find it unreasonable for defense counsel to refrain from objecting to the State's questions about the content of the video to confirm the acts depicted in the video comport with those required by the charged offense.

¶ 36 Second, defendant argues defense counsel was ineffective for failing to object to the State's use of the word "repulsive" both during cross-examination and during closing argument. While defendant now claims the State's use of the word "repulsive" was prejudicial, we note that it was defendant who first used the word "repulsed" during his direct examination to explain why he began and continued to watch child pornography. In that explanation, defendant used the word "repulsed" three times. Thereafter, defense

14

counsel also used the word "repulsed" in the next question. As such, we find the State's use of the word "repulsive" during cross-examination a continuation of the line of questioning stemming from defendant's direct testimony, and therefore, it was not unreasonable for defense counsel to abstain from objecting to the State's use of the word.

¶ 37 During closing argument, the State used the word "repulsive" six times after addressing the age of the child in the video. Taking the State's words in context, we note that the first two uses repeated defendant's testimony, the next three uses addressed the video and child pornography, and the final instance again repeated defendant's testimony. Contrary to defendant's contention, the State never called the defendant, or his behavior, repulsive. Further, the State specifically separated the elements of the crime from the word repulsive. Finally, defense counsel used the word "repulsed" in his closing and conceded that most, if not all, viewers of the video would be repulsed by the images shown on the video. We note the well-established principle that a "prosecutor has wide latitude in making a closing argument." *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005). A prosecutor may comment on the evidence during closing argument and may make fair, reasonable inferences from it, "even if such inferences reflect negatively on the defendant." *Id*. Given the context in which the State used the word "repulsive," along with defense counsel's own use of a similar word, we do not find it was unreasonable for defense counsel to refrain from objecting to the State's use of the word "repulsive" during its questioning or closing arguments.

¶ 38 Third, defendant argues that defense counsel was ineffective in allowing the State to submit 5 of the 400 Hentai images found on his computer because the images were

15

irrelevant or improper propensity evidence. All five images depicted toddler-aged children in sexual situations. The State's response is two-fold. First, the State argues that the Hentai images were admissible for other purposes including "intent" and "absence of mistake or accident" as provided in Rule 404(b). Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Second, the State argues that propensity evidence is allowed in cases involving sexually based acts or crimes as seen in this case pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963. 725 ILCS 5/115-7.3 (West 2018). While the State's argument has merit, we can find no strategic reason to support defense counsel's failure to object to the evidence. As such, we find defense counsel's failure to object to the evidence was error.

¶ 39 Fourth, defendant argues that defense counsel was ineffective by allowing the State to play the entire 21-minute child pornography video for the jury. We consider this argument in conjunction with the well-established law vesting the trier of fact with deciding the age of the child depicted in the video (*People v. Thomann*, 197 Ill. App. 3d 488, 498 (1990)) and the strong presumption that defense counsel's actions or inaction was merely trial strategy. *People v. Tucker*, 2017 IL App (5th) 130576, ¶ 26. In this case, defense counsel persistently argued that the child in the video could have been older than 13. Given defense counsel's argument, and the lack of direct evidence concerning the child's actual age, we acknowledge that at least some portion of the video would need to be viewed by the jury. However, we agree that playing the entire 21-minute video was unnecessary and we can conceive of no strategic reason for defense counsel's failure to limit the length of the video displayed to the jury.

16

¶ 40 Two of defendant's claims of clear error fail to overcome the strong presumption that the inaction of defense counsel may have been the product of sound trial strategy. *People v. Gacy*, 125 Ill. 2d 117, 126 (1988). However, we find defense counsel was deficient in not objecting to the State's submission of the Hentai images and the State's playing the full 21-minute video to the jury. As such, we consider the effect of defense counsel's deficiencies under the second prong of review enunciated in *Strickland*.

¶ 41 "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Specifically, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *People v. Domagala*, 2013 IL 113688, ¶ 36. "A 'reasonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.' " *People v. Simpson*, 2015 IL 116512, ¶ 35 (quoting *Strickland*, 466 U.S. at 694). In weighing the impact of defense counsel's errors, we consider the totality of the evidence before the finder of fact. *Strickland*, 466 U.S. at 695.

¶ 42 At the trial, defendant confessed to every element of the crime, except the age of the child in the video. Defendant's testimony, coupled with his police interview statements and the testimonies of Wallace and McCarthy, constitutes considerable, properly admitted, evidence supporting the verdict. Considering the totality of the evidence which the State presented to the jury, we cannot find that defense counsel's

17

errors were sufficient to undermine our confidence in the verdict. As no prejudice can be shown, we find that defendant's claims of ineffective assistance of counsel must fail.

¶ 43                                         B. Plain Error

¶ 44    Defendant next claims prosecutorial misconduct and error regarding the trial court's denial of his lesser included charge jury instructions. Defendant concedes that neither of these allegations were preserved and requests plain error review. The plain error doctrine allows a reviewing court to consider unpreserved errors in two instances. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The first arises when "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error." *Id.* The second arises when "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* "As a matter of convention, our court typically undertakes plain-error analysis by first determining whether error occurred at all." *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). "If error is found, the court then proceeds to consider whether either of the two prongs of the plain-error doctrine have been satisfied." *Id.* at 189-90. Therefore, we first consider whether defendant's claims of error have merit.

¶ 45                                1. Prosecutorial Misconduct

¶ 46    Defendant contends that he was denied a fair trial due to the State's questions asked during cross-examination and its use of the word "repulsive" during cross-examination and closing argument. He argues that the State's conduct constituted both

18

singular and cumulative prosecutorial misconduct.[1] On review we consider whether the conduct of the State was improper or abusive and, if so, we then consider whether the evidence was closely balanced or if that conduct was "of such a magnitude that the defendant was denied a fair trial." *People v. Welch*, 365 Ill. App. 3d 978, 988 (2005). As such, we first consider whether the State's conduct rose to the level of error.

¶ 47 Defendant first claims prosecutorial misconduct based on the State's questions during cross-examination that are set forth above in paragraph 34. As noted above, the State's questions were relevant to the issues presented at trial and matters raised on direct examination. Here, defendant presents no argument to the contrary and provides no authority stating that eliciting testimony from a defendant, that is cumulative of a relevant fact, amounts to prosecutorial misconduct. As such, we do not find the State's questions were improper.

¶ 48 Defendant next argues that the prosecutor's repeated use of the word "repulsive" amounted to prosecutorial misconduct. We have closely reviewed the State's questions during cross-examination and comments during closing argument. Contrary to defendant's contention, at no time did the prosecutor ever call defendant or his behavior "repulsive." The State's use of the word during cross-examination stemmed from defendant and defense counsel's use of the word "repulsed" during direct examination.

---

[1]Defendant's reply brief also claimed prosecutorial misconduct based on the State's playing the full 21-minute video to the jury and submission of the Hentai images. Points not argued in an appellant's initial brief "are forfeited and shall not be raised in the reply brief." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). As such, we will not consider those arguments.

19

As such, the State's use of the word was merely a continuation of the line of questioning presented first during direct examination.

¶ 49 We also consider the State's use of the word "repulsive" during closing arguments. When reviewing claims of prosecutorial misconduct in closing argument, a reviewing court will consider the entire closing arguments of both prosecutor and the defense attorney, to place the remarks in context. *People v. Ceja*, 204 Ill. 2d 332, 357 (2003). A prosecutor has wide latitude during closing argument. *People v. Blue*, 189 Ill. 2d 99, 127 (2000). "In closing, the prosecutor may comment on the evidence and any fair, reasonable inferences it yields ***." *Nicholas*, 218 Ill. 2d at 121.

¶ 50 During closing argument, the State used the word "repulsive" six times after addressing the age of the child in the video. As stated above, the State's comments referred to either the defendant's own testimony or the video itself and, in response to the State's closing, defense counsel conceded most if not all people who viewed the video would be "repulsed." The State never called defendant repulsive and specifically separated the elements of the crime from the word "repulsive" when addressing the jury. As such, we do not find the State comments amount to error.

¶ 51 In addition to claiming that the State's acts were individually prejudicial, the defendant also argues that the cumulative effect of the errors seriously undermined the integrity of the judicial proceedings to support reversal under the plain error doctrine. Our supreme court has expressed concern over the cumulative effect of errors that "created a pervasive pattern of unfair prejudice" much of it attributable to misconduct of the

prosecutors resulting in a "synergistic effect" caused by multiple errors. *Blue*, 189 Ill. 2d at 138-40.

¶ 52 Here, we found no error with State's questioning of defendant during cross-examination or its use of the defendant's responses in closing argument. Where no error occurred at all, or any error that may have occurred did not rise to the level of plain error, the defendant is not entitled to a new trial based on cumulative error. *People v. Caffey*, 205 Ill. 2d 52, 118 (2001).

¶ 53                        2. Lesser Included Jury Instruction

¶ 54 Finally, defendant contends the trial court erred by not admitting the lesser included offense jury instruction for possession of child pornography. To preserve an issue for review, a defendant must make both a timely objection and "specifically include the objection in a post-trial motion." *People v. Nieves*, 193 Ill. 2d 513, 524 (2000). Here, defendant failed to include the jury instruction issue in his posttrial motion and therefore did not properly preserve the issue for review. As such, defendant requests review under the plain error doctrine. We review the trial court's determination on the lesser included jury instruction under the abuse of discretion review standard. *People v. McDonald*, 2016 IL 118882, ¶ 42. "An abuse of discretion occurs only where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *People v. Rivera*, 2013 IL 112467, ¶ 37.

¶ 55 "Generally, a defendant may not be convicted for an offense for which he has not been charged." *People v. Hamilton*, 179 Ill. 2d 319, 323 (1997). "However, in an appropriate case, a defendant is entitled to have the jury instructed on a less serious

21

offense if that offense is included in the charged offense." *Id*. In Illinois, the charging instrument approach is used to determine whether a particular offense is a lesser included offense of another. *People v. Novak*, 163 Ill. 2d 93, 113 (1994), *abrogated on other grounds by People v. Kolton*, 219 Ill. 2d 353, 364 (2006). "The charging instrument approach is two tiered." *Ceja*, 204 Ill. 2d at 360. "First, a court must determine whether the charging instrument describes the lesser offense." *Id*. Each decision "must be made on a case-by-case basis using the factual description of the charged offense in the indictment." *Kolton*, 219 Ill. 2d at 367. Here, such analysis is unnecessary because the State conceded, based on the facts in this case, that possession of child pornography would be a lesser included offense of child pornography.

¶ 56     "Once a lesser included offense is identified, however, it does not automatically follow that the jury must be instructed on the lesser offense." *Hamilton*, 179 Ill. 2d at 324. "A defendant is entitled to a lesser included offense instruction only if an examination of the evidence reveals that it would permit a jury to rationally find the defendant guilty of the lesser included offense but acquit the defendant of the greater offense." *Id*.; see also *Ceja*, 204 Ill. 2d at 360; *People v. Jones*, 175 Ill. 2d 126, 135 (1997); *People v. Landwer*, 166 Ill. 2d 475, 486 (1995). Therefore, in this case the second tier required the trial court to determine if a jury could rationally acquit the defendant of dissemination of child pornography.

¶ 57     Defendant was charged with child pornography pursuant to section 11-20.1(a)(2) of the Criminal Code of 2012, which states:

"(a) A person commits child pornography who:

22

***

(2) with the knowledge of the nature or content thereof, reproduces, disseminates, offers to disseminate, exhibits or possesses with intent to disseminate any film, videotape, photograph or other similar visual reproduction or depiction by computer of any child *** whom the person knows or reasonably should know to be under the age of 18 *** engaged in any activity described in subparagraphs (i) through (vii) of paragraph (1) of this subsection[.]" 720 ILCS 5/11-20.1(a)(2) (West 2018).

One of the subparagraph activities includes actual or simulated engagement: "in any act of sexual penetration or sexual conduct involving *** the mouth, anus or sex organs of the child *** and the sex organs of another person." *Id.* § 11-20.1(a)(1)(ii).

¶ 58    The statute also explains that:

" 'Disseminate' means (i) to sell, distribute, exchange or transfer possession, whether with or without consideration or (ii) to make a depiction by computer available for distribution or downloading through the facilities of any telecommunications network or through any other means of transferring computer programs or data to a computer." *Id.* § 11-20.1(f)(1).

¶ 59    Defendant argues that the State failed to prove he had the intent to disseminate the child pornography and therefore he is entitled to the lesser charge instruction. However,

23

defendant's bill of indictment was amended at the close of evidence.[2] Prior to the amendment, the State was required to show either that defendant intended to disseminate or that he did disseminate the child pornography. Following the amendment, the State was only required to show that defendant disseminated the video.

¶ 60   Here, the defendant admitted that the video at issue was child pornography and that the acts depicted on video involved the child's mouth and anus as well as another male's penis. As to dissemination of the video, the defendant admitted that he obtained the video from a sharing network, that he accepted the terms of use for obtaining videos on the sharing network, and that the video, ultimately obtained by Detective Wallace, came from defendant's computer. In addition to defendant's testimony, Detective Wallace testified as to how he obtained the video from defendant's computer, and his testimony was supported by the log file from his computer and the Charter records. As there was no evidence that would allow the jury to acquit defendant of the greater offense, we find the trial court's refusal to admit the lesser included offense jury instruction was not an abuse of discretion.

¶ 61                              III. CONCLUSION

¶ 62   For the foregoing reasons, we find that although some aspects of defense counsel's performance were deficient, the deficiencies did not undermine the outcome of the trial. We find no plain error regarding defendant's claims of prosecutorial misconduct or the

---

[2]Although defendant objected to this amendment at trial, this issue was not raised on appeal. As such, we find the issue is forfeited. *Holmstrom v. Kunis*, 221 Ill. App. 3d 317, 325 (1991); see also Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

trial court's rejection of defendant's lesser included offense jury instruction. As such, we affirm defendant's conviction.

¶ 63    Affirmed.