NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 220414-U

NO. 4-22-0414

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 30, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| LAMARCUS BASSETT, | ) | No. 14CF1519 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Brendan A. Maher, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1   *Held*:   (1) The claim at issue in the amended petition for postconviction relief fails to make a substantial showing that defendant was deprived of a constitutional right.

(2) The record does not affirmatively refute the representation, in postconviction counsel's certificate pursuant to Illinois Supreme Court Rule 615 (eff. July 1, 2017), that he made amendments to the petition filed *pro se* that were necessary for an adequate presentation of defendant's contentions.

¶ 2   Defendant, Lamarcus Bassett, is serving a sentence of imprisonment for armed robbery (720 ILCS 5/18-2(a)(2) (West 2014)). He petitioned, *pro se*, for postconviction relief. The circuit court of Winnebago County appointed postconviction counsel, who amended the petition. The State moved for dismissal of the amended petition on the ground of legal insufficiency. The court granted the motion, concluding that the amended petition failed to make a substantial showing that defendant had been deprived of a constitutional right.

¶ 3    Defendant appeals, contesting the dismissal of ground three of his amended petition, a claim that trial counsel rendered ineffective assistance by failing to impeach the victim regarding his bias against defendant. Because the record shows that trial counsel subjected the State's case to meaningful adversarial testing, we conclude that his decision not to attempt an impeachment of the victim in this regard falls into the category of trial strategy and, hence, is immune to a claim of ineffective assistance. Also, apart from such immunity, the decision was objectively reasonable.

¶ 4    Alternatively, defendant claims that postconviction counsel failed to shape ground three of his amended petition into proper legal form. Postconviction counsel filed a certificate representing that he had "made any amendments to the petition filed *pro se* that [were] necessary for an adequate presentation of petitioner's contentions." Because the record does not affirmatively refute that representation, we find that postconviction counsel provided reasonable assistance.

¶ 5    Therefore, we affirm the judgment.

¶ 6                                  I. BACKGROUND

¶ 7    An indictment charged defendant with two counts of armed robbery (*id.* § 18-2(a)(1), (2)) and one count of aggravated robbery (*id.* § 18-1(b)(1)). All three counts were based on an incident in which, on June 17, 2014, defendant allegedly robbed Deonterryo Thompson at gunpoint.

¶ 8    Before the trial, defense counsel filed 10 motions *in limine*, in which he sought to bar the prosecution from mentioning a variety of prior bad acts by defendant, including "having multiple warrants for his arrest and being a suspect in numerous shootings and robberies or other potential offenses." In one of the motions *in limine*, defense counsel sought to bar any mention of the fact that, at the time of the alleged armed robbery, defendant was wearing an ankle bracelet

because he was on mandatory supervised release for second degree murder. Another motion *in limine* expected Thompson to testify "that the Defendant 'kills people and robs them.' " This motion sought to bar such testimony as irrelevant and unfairly prejudicial.

¶ 9 On January 12, 2015, the day of the jury trial, the circuit court granted a motion by the State to dismiss count II, a count alleging armed robbery with a bludgeon (*id.* § 18-2(a)(1)). The court also granted some of the motions *in limine* filed by the defense, including the motions to bar evidence that defendant was on mandatory supervised release for second degree murder and to bar character testimony from Thompson "that the Defendant 'kills people and robs them.' "

¶ 10 In the jury trial, Thompson testified substantially as follows. On June 17, 2014, he was in front of the apartment building in which he resided, in Rockford, Illinois, barbecuing on a grill. Seven or eight people were outside with him. Delano Foreman, accompanied by two other men, came up to Thompson. At the time of the incident, Thompson knew one of Foreman's two companions only by his nickname of Koolaid. Thompson identified Koolaid, in court, as defendant. Thompson did not know the name of the other man who was with Foreman. "[T]hey," the three men, asked Thompson where his friend Tuvia (last name unspecified) was. Thompson answered that Tuvia had left. Defendant and the man whom Thompson did not know then went into the apartment building. "[A]fraid that Koolaid was going to do something to [him]," Thompson went into the apartment building a couple of minutes later, intending to take refuge in his apartment. While climbing the stairs to his apartment, Thompson heard footsteps behind him. He turned, and defendant and the man whose name Thompson did not know were on the staircase. These two men pulled out pistols. Pointing a pistol in Thompson's face, defendant commanded him to empty his pockets. After failing to persuade defendant that he had no money, Thompson handed him $150 in cash. Defendant and the other man then ran down the stairs and out of the

apartment building, got into a black Nissan vehicle, and drove away. Thompson did not immediately telephone the police. Instead, he contemplated retaliation. His mother persuaded him, however, that reporting the robbery to the police would be the better course of action. He did so the day after the robbery. In the police station, he was shown a photographic array, in which he identified defendant as one of the robbers. He identified the second robber, Dezha Manning, in another photographic array.

¶ 11 In his cross-examination of Thompson, defense counsel raised seven points that were calculated to impeach Thompson or to reduce confidence in his testimony. First, Thompson could not remember whether he was robbed on June 17, 2014, or the day before, although, as Thompson admitted, most people would have found being robbed at gunpoint to be "somewhat traumatic." Second, Thompson admitted entering the apartment building right after defendant, although, according to Thompson's testimony on direct examination, he had been afraid that defendant would do something to him. Third, Thompson testified that defendant's accomplice was armed with a black 9-millimeter pistol. On June 18, 2014, however, in his written statement to the police, Thompson represented that this man was armed with a .40- or .45-caliber pistol. Thompson explained on cross-examination, "They all look alike to me, 45, 49." Fourth, Thompson testified he handed $150 to defendant. In his statement to the police, however, Thompson represented that the amount he handed to defendant was only $50. Fifth, as far as Thompson could remember, he gave the police no physical description of defendant other than that he had braided hair and a logo on his shirt or jacket. By contrast, Thompson gave the police a detailed physical description of the other robber. Sixth, Thompson's friend Nuky (last name unspecified) was in the hallway of the apartment building during the armed robbery, and he saw the armed robbery take place. (Nevertheless, Nuky was not called to testify.) Seventh, in addition to being previously adjudicated

- 4 -

to be a delinquent minor, Thompson had a criminal case pending against him in Winnebago County. He faced a potential punishment of up to one year in the county jail, a fine of as much as $2500, and two years of probation. Nevertheless, Thompson denied hoping for leniency as a result of his testimony in the present case.

¶ 12　　　　In addition to calling Thompson, the State called Rockford Detective Dwayne Beets, who testified substantially as follows. When he interviewed Thompson on June 18, 2014, about the robbery that happened the day before, Thompson did not provide much of a physical description of defendant—only a reference to braids or locs and an article of clothing. The reason for this paucity of information, Beets explained, was that Thompson knew defendant and referred to him by name as Koolaid. After interviewing Thompson, Beets assembled a photographic lineup of six photographs. Then he gave Thompson a photographic lineup spread notice, which informed Thompson that (1) the suspect might or might not be in the lineup, (2) Thompson did not have to make an identification, and (3) the person administering the lineup did not necessarily know which person was the suspect. Beets watched Thompson as he read and signed the notice. Then Beets gave Thompson the photographic lineup (People's exhibit No. 2). Without hesitation, Thompson selected defendant's photograph, circling and initialing it. Beets assembled a second photographic lineup (People's exhibit No. 4), using Thompson's more detailed physical description of the second robber, whose face Thompson knew but whose name Thompson did not know. On June 25, 2014, after having been given the same notice as before, Thompson selected Manning's photograph in the second lineup.

¶ 13　　　　In his closing argument to the jury, defense counsel reasoned that if, as Thompson testified, all pistols looked alike to him, it was unproven that the robbers even used firearms. If, as Thompson testified, all pistols looked the same to him, then (defense counsel argued) Thompson

was unable to tell the difference between a BB pistol and a pistol that was a firearm. See 720 ILCS 5/18-2(a)(2) (West 2014) (providing that a person commits armed robbery when he or she commits robbery and is armed with a "firearm"); *id.* § 2-7.5 (providing that "firearm" has the meaning ascribed to it in section 1.1 of the Firearm Owners Identification Card Act (430 ILCS 65/1.1 (West 2014)); 430 ILCS 65/1.1 (West 2014) (excluding a BB gun or pneumatic gun from the definition of a "firearm"). Also, defense counsel maintained that, for seven reasons, Thompson was an unreliable witness. First, not only had he been adjudicated a delinquent minor, but—implausibly— he denied having any hope that his testimony would bring him leniency in the criminal case pending against him. Second, Thompson could not even figure out what day it was when he was robbed. Third, Thompson had tripled the amount stolen from him, telling the police it was only $50 but testifying it was $150. Fourth, Thompson's story made no sense. He followed two men into the apartment building even though he supposedly feared that the two men were going to do something to him. Fifth, Thompson waited 18 hours to report the incident to the police. Sixth, Thompson gave the police hardly any description of what defendant looked like. He told the police that defendant had braids. In the photograph in the lineup, however, defendant had no braids. Thompson never mentioned to the police the tattoo under defendant's left eye, which could be plainly seen by the jury. Seventh, defense counsel noted the State's failure to call Nuky or any of the six or seven other people who were at the barbecue.

¶ 14     After deliberating for three hours, the jury sent out a note that it was hung. The circuit court responded with a note to continue deliberating. Ultimately, the jury found defendant guilty of armed robbery and aggravated robbery.

¶ 15        On February 19, 2015, the circuit court imposed a sentence of 32 years' imprisonment on count I, armed robbery (720 ILCS 5/18-2(a)(2) (West 2014)). The court found that count III, aggravated robbery, merged into count I.

¶ 16        Defendant took a direct appeal, in which he raised a single issue. He argued the circuit court had committed plain error by failing to ensure that one of the seated jurors, Michael Messink, understood and accepted the State's obligation to prove defendant guilty beyond a reasonable doubt (see Ill. S. Ct. R. 431(b) (eff. July 1, 2012)). *People v. Bassett*, 2016 IL App (2d) 150213-U, ¶ 14. In his direct appeal, defendant invoked both of the alternative theories of the plain error doctrine: he argued that (1) the violation of Rule 431(b) was inherently serious and (2) the evidence in the trial was closely balanced. *Id.* Disagreeing with both theories (*id.* ¶¶ 26-27), the appellate court affirmed the judgment (*id.* ¶ 30). The appellate court "conclude[d] that, even if a technical violation of Rule 431(b) occurred, the conviction should be affirmed because the plain-error doctrine [did] not excuse defendant's procedural default in failing to object at trial or raise the issue in his posttrial motion." *Id.* ¶ 2.

¶ 17        On April 4, 2018, defendant filed a *pro se* petition for postconviction relief. In his petition, defendant made four claims, which he labeled as arguments A, B, C, and D.

¶ 18        Argument A was that "trial counsel was ineffective for not investigating and presenting [an] alibi witness." In exhibits to his petition, defendant presented affidavits by two alibi witnesses: his sister, Malikah Muhammed, who averred that defendant was home at the time of the armed robbery, and the codefendant, Dezha Manning, who averred that defendant "did not have anything to do with this armed robbery." According to argument A, Thompson's testimony already was weak and inconsistent for three reasons. First, Thompson had "failed to identify [defendant] as one of the perpetrators but instead [had] described an individual" with "braids" who

was "wearing a black shirt with a red logo on it." Second, defendant and Thompson had gotten into "an earlier altercation where [Thompson] had an unfounded grudge against defendant for the death of one of [Thompson's] friend[s]." Third, "suggestive police tactics" had caused Thompson to "inculpate" defendant. In sum, defendant claimed that trial counsel's "failure to investigate[,] subpoena[,] and call [defendant's] alibi witness[es] amounted to ineffective assistance" for the following reasons:

> "[Defendant's] alibi witness would have testified that [defendant] was with her at home when [the] offense occurred [and] this testimony not only could have established and corroborated [defendant's] whereabouts at the time of the offense but also been used to impeach [***] already weak [and] inconsi[s]tent testimony from the victim."

¶ 19        Argument B of the *pro se* petition was twofold: (1) trial counsel rendered ineffective assistance by failing to object when the circuit court neglected to ask Juror Messink if he understood and accepted the State's burden to prove defendant guilty beyond a reasonable doubt, and (2) appellate counsel on direct appeal rendered ineffective assistance by failing to raise this issue.

¶ 20        Argument C was that trial counsel rendered ineffective assistance by "failing to put the plea agreement in writing and [failing to] give defendant good legal advice to accept [the] plea the day it was offer[ed] and inform [defendant] of the possible sentence if he did not accept the plea offer and go to trial."

¶ 21        Argument D was a claim of actual innocence premised on the affidavits of the alibi witnesses, Muhammed and Manning.

¶ 22 On July 9, 2018, the circuit court entered an order stating that the court had lacked "sufficient time to review all of [defendant's] claims or to adequately '*** examine the court file of the proceedings in which [defendant] was convicted, any action taken by an appellate court in such proceeding[,] and any transcripts of such proceeding' within the ninety (90) day time limit imposed by" section 122-2.1(a) of the Post-Conviction Hearing Act (725 ILCS 5/122-2.1(a) (West 2018)). Therefore, for that reason alone (the court emphasized), the court appointed postconviction counsel and ordered that the *pro se* petition be " 'docketed for further consideration and hearing' pursuant to" section 122-2.1(b) (*id.* § 122-2.1(b)). The court said that it thereby made no finding as to whether the petition stated the gist of a constitutional claim.

¶ 23 On August 17, 2020, postconviction counsel filed an amended petition for postconviction relief. The amended petition sought relief on four grounds, which were labeled as grounds one, two, three, and four.

¶ 24 Ground one was that trial counsel rendered ineffective assistance by failing to object when Messink gave no response to the circuit court's question of whether he understood and accepted the State's obligation to prove defendant guilty beyond a reasonable doubt.

¶ 25 Ground two was that trial counsel rendered ineffective assistance by (1) "fail[ing] to properly advise the Defendant of a 12 year plea offer," (2) "fail[ing] to advise the Defendant of his possible sentencing exposure if found guilty of armed robbery," and (3) "allow[ing] the offer to be revoked before the Defendant could accept it."

¶ 26 Ground three was that trial counsel rendered ineffective assistance by "fail[ing] to meet with the Defendant sufficiently in order to adequately prepare a defense for trial." The amended petition continued:

"30. Prior to trial, the Defendant made his attorney aware that the victim, Thompson, knew him well and that Thompson had a grudge against him. He also told his attorney that he did not rob Thompson and that Thompson had fabricated the story to get even with him.

31. Trial counsel did not put on any evidence, choosing to rely solely on cross examination of Thompson as to some inconsistencies in his testimony and prior police statements. Counsel essentially conceded the Defendant's guilt as to one or both charges.

32. Trial counsel's failure to review evidence and strategy with the Defendant arises to a level of ineffective assistance. *** [T]here appears to be no strategy whatsoever. Given that counsel failed to meet with the Defendant sufficiently to develop a defense strategy and then failed to give competent advise [*sic*] on the issue of possible sentencing exposure as discussed in Ground Two, the cumulative effect arises to the level of ineffective assistance."

In an accompanying affidavit, defendant averred:

"6. Prior to our meeting on [January 8, 2015], my attorney spent little time with me to review the evidence or what our trial strategy would be.

7. I told my attorney that Deonterryo Thompson had a grudge against me and fabricated the story about being robbed. My attorney led me to believe that I could not be found guilty based on the testimony of Thompson. My attorney never made it clear to me or sought my input into what our trial strategy would be. I wanted to testify but my attorney convinced me otherwise."

¶ 27 Ground four was that appellate counsel rendered ineffective assistance on direct appeal by failing to argue the preceding three grounds.

¶ 28 On October 20, 2020, postconviction counsel filed an amended certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). One of his representations in the certificate was that he had "made any amendments to the petition filed *pro se* that [were] necessary for an adequate presentation of petitioner's contentions."

¶ 29 On May 3, 2022, the circuit court granted a motion by the State to dismiss the amended postconviction petition.

¶ 30 On May 16, 2022, defendant filed his notice of appeal, designating the order of May 3, 2022, as the judgment from which he appealed.

¶ 31 II. ANALYSIS

¶ 32 A. The Legal Sufficiency of Ground Three

¶ 33 1. *Failing to Impeach Thompson Regarding His Grudge Against Defendant*

¶ 34 Defendant contends the circuit court erred by dismissing, as legally insufficient, ground three of the amended petition, the claim that trial counsel rendered ineffective assistance by failing to impeach Thompson with evidence of his bias, his grudge, against defendant. To survive the State's motion for dismissal, the amended petition had to "make a substantial showing of a deprivation of rights under either the United States or Illinois Constitution[ ] or both." *People v. Dupree*, 2018 IL 122307, ¶ 28. We decide *de novo* whether ground three makes such a showing. See *People v. Young*, 2022 IL App (1st) 210534, ¶ 41.

¶ 35 In ground three of his amended petition, defendant invokes a well-recognized constitutional guarantee. Under the United States and Illinois Constitutions, a defendant has the right to effective assistance from trial counsel. *People v. Peterson*, 2017 IL 120331, ¶ 79 (citing

- 11 -

U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8). To establish that trial counsel rendered ineffective assistance, the defendant must show that both of the following propositions hold true: (1) counsel's performance "fell below an objective standard of reasonableness," and (2) there is a "reasonable probability *** that, but for counsel's errors, the result of the proceeding would have been different" (which is to say, more favorable to the defendant). *Id.* In short, the defendant must show deficiency of performance and resulting prejudice. *Id.*

¶ 36    Establishing deficiency of performance in the impeachment of a witness tends to be a daunting task. What makes this type of claim so troublesome is that (1) impeachment is a matter of trial strategy (*People v. Pecoraro*, 175 Ill. 2d 294, 326 (1997); *People v. Phillips*, 2017 IL App (4th) 160557, ¶ 58) and (2) the supreme court has said this about trial strategy:

> "[M]atters of trial strategy [citation] *** are generally immune from claims of ineffective assistance of counsel. [Citation.] *** The only exception to this rule is when counsel's chosen trial strategy is so unsound that counsel *entirely* fails to conduct *any* meaningful adversarial testing. [Citation.]" (Emphases added and internal quotation marks omitted.) *People v. West*, 187 Ill. 2d 418, 432-33 (1999).

Recently, the supreme court reiterated this rule from *West*, holding again that "[e]rrors in trial strategy do not constitute ineffective assistance unless counsel entirely fails to conduct any meaningful adversarial testing." (Internal quotation marks omitted.) *People v. Custer*, 2019 IL 123339, ¶ 39; see also *Phillips*, 2017 IL App (4th) 160557, ¶ 58; *People v. Leslie*, 2022 IL App (4th) 200528-U, ¶ 19. Thus, even if the defendant can identify an additional subject on which trial counsel might have impeached a witness, the defendant has no valid claim of ineffective assistance if trial counsel subjected the State's case to some significant adversarial testing.

¶ 37        *Phillips* illustrates this principle. In *Phillips*, the postconviction petition faulted trial counsel for failing to prove that the victim had been promised something in return for testifying against the defendant. *Phillips*, 2017 IL App (4th) 160557, ¶ 1. The prosecutor had told the victim that, in return for his testimony, the state's attorney's office would not refer him for federal prosecution for drug offenses. *Id.* ¶ 42. On cross-examination, the victim denied that any such promise had been made to him. *Id.* ¶ 14. In his postconviction petition, the defendant criticized trial counsel for not proving this promise by other means. *Id.* ¶ 34. Because the defendant, however, had "failed to show his counsel's trial strategy amounted to a complete failure to conduct any meaningful adversarial testing," the appellate court affirmed the decision against the defendant on this claim of ineffective assistance. *Id.* ¶ 59. The appellate court noted, "[C]ounsel attacked [the victim's] credibility with his prior felony conviction as well as his possible felony drug conviction and the fact he did not know if he had any other felony convictions." *Id.* In other words, even though trial counsel did not succeed in impeaching the victim on one ground, he impeached the witness on other grounds, and thus, *some* meaningful adversarial testing had taken place. Therefore, the defendant had no legitimate claim of ineffective assistance.

¶ 38        Similarly, in the present case, even though trial counsel did not impeach Thompson on his supposed grudge against defendant, he impeached Thompson in other ways. It could not be reasonably contended that trial counsel completely failed to conduct any meaningful adversarial testing. He filed 10 motions *in limine*, and they were largely successful. In his cross-examination of Thompson and in his closing argument, he exposed serious vulnerabilities in the State's case. The record leads us to disagree with postconviction counsel's assertion that "[c]ounsel essentially conceded the Defendant's guilt as to one or both charges." On the contrary, there was meaningful adversarial testing. Defense counsel's cross-examination of Thompson and his closing argument

were hard-hitting. Therefore, trial counsel's decision not to try to impeach Thompson regarding his grudge against defendant is "immune from [a] claim[ ] of ineffective assistance of counsel." *West*, 187 Ill. 2d at 432.

¶ 39     To be clear, the rule in *West*, in and of itself, makes ground three of defendant's amended petition legally insufficient. Apart from that fatal flaw, we would point out that defense counsel's decision not to question Thompson about his alleged bias against defendant was objectively reasonable. See *People v. Mays*, 2023 IL App (4th) 210612, ¶ 117. If, on cross-examination, defense counsel had elicited an admission from Thompson that he had an earlier altercation with defendant, defense counsel might have thereby opened the door to what the altercation possibly was about: defendant's allegedly having caused the death of one of Thompson's friends. Defense counsel might have ended up sabotaging his wise strategy of excluding defendant's prior bad acts.

¶ 40                    2. "*Fail[ing] to Meet with the Defendant Sufficiently*"

¶ 41     In ground three of the amended petition, defendant claimed that "[t]rial counsel failed to meet with the Defendant sufficiently in order to adequately prepare a defense for trial." This claim is conclusory and, therefore, is not taken as true. See *People v. Rissley*, 206 Ill. 2d 403, 412 (2003). In deciding whether a petition makes a substantial showing of a deprivation of constitutional rights, we assume the truth of "all well-pleaded facts in the petition and affidavits" (*id.*) to the extent that those well-pleaded factual allegations are not "affirmatively refuted by the record" (*People v. Domagala*, 2013 IL 113688, ¶ 35). By contrast, we do not assume the truth of "nonfactual and nonspecific assertions [that] merely amount to conclusions." *Rissley*, 206 Ill. 2d at 412. Whether a meeting is "sufficient[ ]" and whether preparation is "adequate[ ]" are matters of evaluative judgment—they are conclusions instead of well-pleaded facts. The conclusory

assertion that "[t]rial counsel failed to meet with the Defendant sufficiently in order to adequately prepare a defense for trial" did not merit an evidentiary hearing. See *id.*

¶ 42　　　　In sum, in our *de novo* review (see *Young*, 2022 IL App (1st) 210534, ¶ 41), we find ground three of the amended petition, the claim at issue in this appeal, to be legally insufficient. Taking the well-pleaded facts in the claim to be true and disregarding its bare conclusions (see *Rissley*, 206 Ill. 2d at 412), we find that the claim fails to "make a substantial showing of a deprivation of rights under either the United States or Illinois Constitution[ ]." *Dupree*, 2018 IL 122307, ¶ 28.

¶ 43　　　　B. The Alternative Claim That Postconviction Counsel Failed to Provide Reasonable Assistance in Shaping Defendant's Claims Into Proper Legal Form

¶ 44　　　　Alternatively, defendant argues that postconviction counsel failed to fulfill his duty of "investigat[ing] the defendant's claims and mak[ing] any amendments necessary for an adequate presentation of the defendant's contentions." *People v. Austin*, 2022 IL App (4th) 200630-U, ¶ 36 (citing Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013)). Defendant complains that, in the amended petition, "[t]here was no discussion of what counsel should have done differently (*e.g.*, investigate Thompson's bias and present evidence on it)." Because the amended petition contained no mention or proof of the earlier altercation between Thompson and defendant, the allegation, in ground three of the amended petition, that "Thompson had a grudge against [defendant]" was a bare conclusion. Second, defendant criticizes the amended petition for failing to "specify what 'evidence' and 'strategy' trial counsel failed to review." We agree with these criticisms. Defendant has identified some pleading deficiencies and evidentiary omissions in ground three.

¶ 45　　　　The trouble is, even if ground three had suggested (and substantiated) a reason why a grudge or bias of Thompson against defendant might have been inferred—namely, because of

their earlier altercation over the death of Thompson's friend—its claim of ineffective assistance would remain frivolous. As we have explained, it is not arguable that trial counsel completely failed to subject the State's case to any meaningful adversarial testing. Therefore, under binding precedent, the strategic decision not to try to impeach Thompson regarding his alleged grudge against defendant is immune to a claim of ineffective assistance. See *West*, 187 Ill. 2d at 432.

¶ 46    Defendant maintains, however, that the potential merit of the claim of ineffective assistance in ground three is irrelevant to the question of compliance with Rule 651(c). Quoting from *People v. Suarez*, 224 Ill. 2d 37, 47 (2007), he argues, "[i]f it is shown that counsel failed to fulfill any one of [the requirements in Rule 651(c)], 'remand is required *** regardless of whether the claims raised in the petition her merit.' " The facts in *Suarez*, however, are significantly different from those in the present case. In *Suarez*, the postconviction counsel never filed a certificate pursuant to Rule 651(c). *Id.* at 40. In such a certificate, the postconviction counsel would have certified that he had " 'consulted with petitioner *** to ascertain his contentions of deprivation of constitutional right.' " *Id.* at 42 (quoting Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984). Absent a certificate pursuant to Rule 651(c), the record in *Suarez* failed to show that such a consultation had taken place. See *id.* at 44. The supreme court was unwilling to excuse as harmless error the lack of such a showing by the record. *Id.* at 52. In the present case, by contrast, postconviction counsel filed a certificate pursuant to Rule 651(c). Consequently, the analysis in this case is different from that in *Suarez*.

¶ 47    "The filing of a Rule 651(c) certificate by postconviction counsel averring that counsel has complied with the three requirements of Rule 651(c) creates a presumption of compliance with the rule." *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 26. We will credit the representations in the certificate unless we find, in our *de novo* review (see *id.*), that "the record

- 16 -

positively rebuts" the representations. *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 28; see also *People v. Perkins*, 229 Ill. 2d 34, 52 (2007); *People v. Morgan*, 2015 IL App (1st) 131938, ¶ 100.

¶ 48 According to defendant, the record contradicts postconviction counsel's representation, in his amended certificate, that he "made any amendments to the petition filed *pro se* that [were] necessary for an adequate presentation of [defendant's] contentions." Ground three of the amended petition, defendant argues (alternatively), was conclusory and, therefore, was legally insufficient on its face. If a contention is presented in a conclusory way, the contention is not adequately presented. See *Rissley*, 206 Ill. 2d at 412. Defendant contends that, by recasting a *pro se* claim as a naked conclusion, a postconviction counsel fails to "shape" the *pro se* claim "into proper legal form." See *Perkins*, 229 Ill. 2d at 43-44. Defendant complains that his postconviction counsel at least could have included, in the amended petition, an explanation of why defendant thought that Thompson had a grudge against him: they had gotten into an altercation earlier.

¶ 49 Rule 651(c) required postconviction counsel to "ma[k]e any amendments to the petitions filed *pro se* that [were] necessary for an adequate presentation of [defendant's] contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). The supreme court has held, "If amendments to a *pro se* postconviction petition would only further a frivolous or patently unmeritorious claim, they are not 'necessary' within the meaning of [Rule 651(c)]." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). By that standard, ground three of the amended petition—though pleaded by postconviction counsel—was unnecessary. It follows that any further amendment of the *pro se* petition by further elaboration of ground three was unnecessary. Defendant cites *People v. Dixon*, 2018 IL App (3d) 150630, ¶ 22, in which the appellate court remarked, "Here, postconviction counsel chose to file an amended petition, so we assume that counsel found that the allegations in the *pro se* petition were not frivolous." *Dixon* is distinguishable, however, because (regardless of

what the postconviction counsel in this case might have thought) the trial transcript shows ground three of the amended petition to be frivolous. Reasonable assistance did not require the elaboration of a claim of ineffective assistance that was, under *West*, obviously and incurably unmeritorious. See *Greer*, 212 Ill. 2d at 205.

¶ 50                                       III. CONCLUSION

¶ 51          For the foregoing reasons, we affirm the circuit court's judgment.

¶ 52          Affirmed.